PREFERRED ENTERAL SYSTEMS, INC., Plaintiff-Appellant, v. CENTRAL HOME, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—93—3016

Opinion filed December 29, 1995.

Jeffrey H. Bunn, of Chicago, for appellant.

Torshen & Spreyer, Ltd., of Chicago (Jerome H. Torshen, Abigail K. Spreyer, James K. Genden, and Albert J. Koretzky, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Preferred Enteral Systems, Inc. (Preferred), filed this case against defendants, Central Home, Inc. (Central), Henry Mermelstein and Marvin Mermelstein, based on an action for breach of contract and on actions related to the contract. Preferred appeals from a judgment on the pleadings in favor of defendants. We reverse and remand.

The judgment on the pleadings was based upon Preferred's verified third amended complaint (complaint), consisting of four counts. Count I is entitled "Breach of Contract"; count II is entitled "Tortious Interference with Contract"; count III is entitled "Tortious Interference with Prospective Economic Advantage"; and count IV is entitled "Breach of Fiduciary Duty." Each of the four counts has as its basis the existence of a contract between Preferred and Central stemming from a document entitled "Agreement." The judgment on the pleadings as to all four counts of the complaint was founded upon the premise that the agreement between Preferred and Central is not a contract, but is instead an illusory and unenforceable agreement.

The agreement provides:

*"AGREEMENT*

This agreement is made this 5th of October , 1989, by and between Central Home Inc. ('Facility'), an Illinois corporation and PREFERRED ENTERAL SYSTEMS, INC. ('Preferred').

*WITNESSETH*

WHEREAS, Preferred is engaged in the business of procuring, storing, reselling, leasing, delivering, servicing and billing for all medical supplies required for providing enteral feeding pumps to qualified persons, including but not limited to nursing home residents; and

WHEREAS, Preferred is engaged in the business of procuring, storing, reselling, delivering and billing for urological supplies provided to qualified persons including but not limited to nursing home residents; and

WHEREAS, Preferred is engaged in the business of procuring, storing, reselling, delivering and billing for colostomy supplies provided to qualified persons, including but not limited to nursing home residents; and

WHEREAS, Preferred is engaged in the business of procuring, storing, reselling, delivering and billing for tracheostomy supplies provided to qualified persons, including but not limited to nursing home residents; and

WHEREAS, Preferred is engaged in the business of procuring,

storing, reselling, delivering and billing for other medical equipment and supplies provided to qualified persons, including but not limited to nursing home residents; and

WHEREAS, Facility manages and/or operates nursing homes with patients that require enteral feeding pumps, urological supplies, tracheostomy supplies and other medical equipment and supplies;

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the parties agree as follows:

## 1. *DUTIES OF PREFERRED*

A. Preferred shall provide inventory and supplies required to fulfill Facility's needs for enteral feeding pumps, feeding bags, enteral food for enteral patients, colostomy bags and bonding agents where needed, tracheostomy care kits, oxygen concentrators for patients on continuous oxygen, urinary catheters, urinary drain bags, dressing care kits and ostomy care.

B. Preferred shall provide monthly professional nutritional and skin care support and evaluations of decubitus and enteral patients.

C. Preferred shall clean the enteral feeding pumps at regular intervals.

D. Preferred shall deliver supplies weekly or as need[ed] to locations designated by Facility.

E. Preferred shall submit all billings to Medicare; Medicare's designated intermediary or to residents' individual insurance companies for services and supplies provided by Preferred.

## 2. *DUTIES OF FACILITY*

A. Facility shall provide detailed and accurate patient data regarding each patient for whom supplies are provided by Preferred. Information shall be updated as it becomes available.

B. Facility shall maintain an inventory of enteral feeding, urological, colostomy and tracheostomy supplies to be used on an emergency basis.

C. Facility shall be responsible for seeing that the proper patient receives the proper supplies.

## 3. *MONIES RECEIVED FROM THIRD-PARTY PAYORS*

All monies received from third-party payors as a result of bills submitted by Preferred shall be paid to Preferred.

## 4. *SEVERABILITY*

All agreements and covenants contained herein are severable and in the event any of them shall be held to be invalid by any

competent courts, this Agreement shall be interpreted as if such invalid agreements or covenants were not contained herein.

### 5. *CHOICE OF LAW AND FORUM*

This Agreement and the performance hereunder and all suits and special proceedings hereunder shall be construed and adjudicated in accordance with the laws of the State of Illinois and in the Courts of said State.

### 6. *DURATION OF AGREEMENT*

This Agreement shall commence on 5th of October , 1989, and shall remain in full force and effect for Thirty-Six (36) months. This Agreement shall be automatically renewed for additional Thirty-Six (36) month periods on the same terms and conditions contained herein, unless terminated by written notice to the other party at least Twelve (12) months in advance[.]

IN WITNESS THEREOF, the parties hereto have executed this Agreement on the 5th day of October , 1989.

| CENTRAL HOME INC. | PREFERRED ENTERAL SYSTEMS INC. |
|---|---|
| By: Michael R. Giannini | By: Mark Siebzner |
| Executive Director-Adm. | General Manager |
| Title | Title." |

■ Based solely upon the document itself, it is clear that both Preferred and Central clearly intended the agreement to be a contract. Paragraph 5 is especially telling; it is a choice of law and forum selection for any construction or enforceability disputes that pertain to the agreement. Paragraph 5 would be totally meaningless if the parties intended only an illusory or unenforceable agreement.

Paragraph 6 is also revealing. It specifies the duration of the agreement. It provides that the agreement "shall remain in full force and effect for Thirty-Six (36) months." Paragraph 6 also provides that the agreement "shall be automatically renewed for additional Thirty-Six (36) month periods on the same terms and conditions" unless terminated by written notice to the other party at least 12 months in advance. Under the circumstances, it is plain that the parties to the agreement did not intend a *nudum pactum*. Instead, they intended the agreement to be a contract.

We next relate the agreement to the relevant allegations in the complaint. The complaint alleges that Central owned and operated a nursing home facility in Chicago subject to the requirements of the Nursing Home Care Act (State Act) (210 ILCS 45/1—101 *et seq.* (West 1992)) and the Health Insurance for Aged and Disabled Act (Federal Act) (42 U.S.C. § 1395 *et seq.* (1994)). Pursuant to the State Act, the

residents of the facility execute a contract with Central setting forth the responsibilities of Central. Under the Federal Act, certain residents enter into an agreement with Central which provides that Central will not invoice the residents directly for its services but rather will invoice appropriate governmental agencies.

The complaint also alleges that, pursuant to the State Act and the Federal Act, and the contract with its residents, Central owes its residents a duty to take such steps as are necessary to insure that each resident's written plan of care is carried out in a reasonable and professional manner by providing requisite medical services itself or by retaining third-party providers to render such services. It also alleges that a substantial number of the residents suffer from advanced conditions of illness or physical deterioration so that they are incapable of feeding themselves or controlling their excretory functions without the assistance of specialized medical equipment and supplies and emergency-type services utilizing such equipment and supplies. See *Litchfield Terrace, Ltd. v. Department of Public Health* (1993), 252 Ill. App. 3d 1090, 624 N.E.2d 1301.

In addition, the complaint alleges that, pursuant to the agreement, Central undertook to purchase from Preferred such supplies as would be necessary to maintain its inventory and allow Central to make readily available to its residents, on an emergency basis, enteral feeding pumps, feeding bags, enteral foods for enteral patients, colostomy bags and bonding agents, tracheotomy care kits, oxygen concentrators for patients on continuous oxygen, urinary catheters, urinary drain bags, dressing care kits and/or ostomy care. Also, in lieu of providing such services itself to those residents who may have failed to make independent arrangements for such services, Central retained Preferred to provide such services. It is also alleged that with respect to those services delegated by Central to Preferred, Central agreed that Preferred would invoice appropriate governmental agencies, on behalf of the respective residents, in the same manner that Central would otherwise be required to do pursuant to the Federal Act.

The complaint also alleges that, by virtue of the agreement, Central delegated to Preferred certain of its contractual and statutory duties owing to its residents; and Preferred agreed to accept responsibility for undertaking those duties. Also, Central agreed to maintain an inventory of enteral feeding, urological, colostomy and tracheostomy supplies, to be used on an emergency basis, to be supplied by Preferred; and Central agreed to provide detailed and accurate patient data regarding each patient for whom supplies were to be provided by Preferred.

The complaint then alleges that the agreement commenced on the 5th of October 1989, and remained in full force and effect for 36 months. It also alleges that in June 1990, Central terminated the agreement, without cause, by refusing to accept any further supplies or services from Preferred, and by refusing to allow Preferred access to medical information necessary to Preferred's ongoing services on behalf of certain residents of Central's facility. Also, Central barred Preferred access to those residents to whom Preferred had previously provided supplies and services. Finally, the complaint alleges that as a direct result of Central's wrongful termination of the agreement, Preferred suffered damages in an amount equivalent to the profits it would have earned during the remaining term of the agreement.

Defendants' argument that the agreement is not a contract and is not enforceable is based on two grounds: (1) the agreement is illusory and unenforceable, and (2) sufficient facts were not pleaded to demonstrate that the agreement was executed by a person with authority to act for Central.

Defendants argue that the agreement is illusory and unenforceable for the following reasons:

> "The 'contract' contains no term that requires Central to purchase anything. It does not contain any reference to prices. It does not require Central to pay anything. The only terms of the 'contract' which refer to payments to Preferred expressly provide that payment is to be made by third parties other than Central."

We disagree with defendants' argument. An illusory promise is a statement that is in the form of a promise, but it imposes no obligation upon the maker of the statement because it lacks specific terms that would be essential to an undertaking and enforceability. It is therefore not consideration for a return promise.

Courts should be reluctant to find statements to be illusory promises, however, if promises were intended. This allows courts to fulfill their main purpose in disputed transactions, which is to see that the intentions of the parties are carried out. Courts exist to see that justice is done based on what the parties intended. Courts do not exist to assist certain parties to an agreement to perpetrate injustices by thwarting what was intended by the parties. In recognition of their *raison d'etre*, the day has arrived when courts are no longer hidebound by strictures that engender injustices and unfairness.

Hence, where it is clear that the parties have intended to form a contract, absent terms to the agreement may be supplied by implying an obligation of good faith and fair dealing, and course of dealing and usage of trade, or by reasonable inferences as to what was intended by the parties. Reasonable inferences as to what was intended by the

parties are determined by the practices that are customary in the type of transaction that is involved and the facts and circumstances surrounding the transaction. See Restatement (Second) of Contracts, section 34, where the comment states:

> "A bargain may be concluded which leaves a choice of terms to be made by one party or the other. If the agreement is otherwise sufficiently definite to be a contract, it is not made invalid by the fact that it leaves particulars of performance to be specified by one of the parties. Uniform Commercial Code § 2—311(1). The more important the choice is, the more it is likely that the parties do not intend to be bound until the choice is made. But even on such matters as subject matter and price, one party is often given a wide choice. If the parties intend to make a contract and there is a reasonably certain basis for granting an appropriate remedy, such alternative terms do not invalidate the contract." Restatement (Second) of Contracts § 34, Comment *a* (1981).

■ In the present case, it is clear that the parties intended to enter into a contract and that the absent terms about which Central complains can be readily supplied by implying an obligation of good faith and fair dealing, and course of dealing and usage of trade, or by reasonable inferences as to what was intended by the parties. It follows that Central's argument that the agreement is illusory and not enforceable because it lacks certain terms is unavailing.

The other part of Central's argument for claiming that the agreement is illusory and unenforceable is equally without merit. Central argues: "It does not require Central to pay anything. The only terms of the 'contract' which refer to payments to Preferred expressly provide that payment is to be made by third parties other than Central."

■ Defendants' argument has no legal foundation. The fact that an agreement provides that payments for an undertaking are to be made by a third party does not make the agreement illusory or unenforceable. Consideration to support a promise may be given to a person other than the promisor if the promisor bargains for that exchange. Conversely, consideration may be given by some person other than the promisee if that is the exchange that is bargained for by the parties. (See R. Mann, B. Roberts, *Smith & Roberson's Business Law* 275 (9th ed. 1994).) Thus, Central's argument is untenable.

We next address defendants' second ground for contending that the agreement is not a contract and is not enforceable. Defendants argued that sufficient facts were not pleaded to demonstrate that the agreement was executed by a person with authority to act for Central, and that "it was not executed by a person with authority to act for Central." We reject defendants' argument.

The complaint alleges:

"16. Upon information and belief, the Director-Administrator of CENTRAL was expressly authorized to negotiate and enter into the parties' oral contract, and further, to execute the subsequent written Agreement on behalf of CENTRAL. Alternatively, the Director-Administrator of CENTRAL possessed apparent authority to negotiate and enter into the parties' oral contract, and further, to execute the Agreement on behalf of CENTRAL.

17. Thereafter, PREFERRED faithfully and professionally performed everything required of it under the terms of the parties' Agreement."

■ The complaint further alleges that Preferred and Central complied with the agreement, dated October 5, 1989, until it was wrongfully terminated by Central in June 1990. Moreover, the agreement itself, which is attached to the complaint as an exhibit, clearly shows that it was signed by "Central Home Inc., by Michael R. Giannini, Executive Director/Administrator." Under the circumstances, whether Giannini had actual or apparent authority to enter into the agreement and execute the agreement on behalf of Central is a factual question. Preferred was not required to plead additional facts to demonstrate that Central is bound by the agreement. Central is clearly, however, not entitled to a judgment on the pleadings on the issue.

Defendants' argument that the agreement was not executed by the person with authority to act for Central is premised on the fact that in a prior pleading Preferred alleged that defendant Mermelstein exclusively controlled the day-to-day business operations of Central. Defendants construe the allegation in the prior pleading as a judicial admission by Preferred that the person who signed the agreement on behalf of Central did not have authority to enter into or execute the agreement on behalf of Central.

■ The allegation in the prior pleading, however, does not serve as a judicial admission that would preclude Preferred from alleging in the current complaint that the agreement was executed by the executive director/administrator of Central and that he had authority to enter into and execute the agreement on behalf of Central. Merely because one person exclusively controls the day-to-day operations of a corporation does not preclude other persons or officers of the corporation from having authority to act as an agent for the corporation and bind the corporation for specific acts. It follows that there is no merit to defendants' argument.

The judgment on the pleadings as to all four counts of the complaint was entered by the trial court on the basis that the agreement

between Preferred and Central is not a contract, but is instead an illusory and unenforceable agreement. The trial court erred. The pleadings are sufficient to establish that the agreement is a valid and enforceable contract between Preferred and Central, and that a cause of action exists for breach of contract. The judgment on the pleadings must therefore be reversed.

Accordingly, the judgment on the pleadings is reversed as to all four counts of the complaint, and the case is remanded for further proceedings consistent with what is stated herein.

Reversed and remanded.

TULLY and CERDA, JJ., concur.