**Kurt REGENSBURGER and Anna Regensburger, Plaintiffs–Appellants,**

v.

**CHINA ADOPTION CONSULTANTS, LTD., Kenneth Lubowich and Renee Lubowich, Defendants–Appellees.**

No. 97–2046.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1997.

Decided March 17, 1998.

Paul R. Shuldiner (argued), Chicago, IL, for Plaintiffs–Appellants.

Barbara J. Buhai, Stephen G. Katz (argued), Tammara M. Lovett, Katz & Buhai, Barrington, IL, for Defendants–Appellees.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The Regensburgers brought this action seeking damages for breach of contract, fraudulent misrepresentation, and negligent misrepresentation. The district court granted the defendants' motion for summary judgment. The Regensburgers now appeal that decision. Appellees moved for sanctions against the Regensburgers for frivolous appeal, and that motion was combined with the case on the merits. For the reasons set forth below, we affirm the judgment of the district court and deny the motion for sanctions.

## I. History

We recite the facts in the light most favorable to the Regensburgers. China Adoption Consultants, Ltd. ("CAC") is an Illinois corporation in the business of providing travel and support services to prospective parents interested in adopting children from the People's Republic of China. CAC is owned by defendant Kenneth Lubowich. CAC has employed defendant Renee Lubowich since 1995.

In January 1995, the Regensburgers engaged the services of CAC. The Regensburgers explained that they wished to adopt a healthy two to two and a half year old from China. The Regensburgers had lost their second child to Sudden Infant Death Syndrome, and they were hoping to adopt a child who would be approximately the same age as their second child would have been. At that time Kenneth Lubowich advised the Regensburgers about the services CAC would provide and the steps necessary to complete an adoption of a child from China. Lubowich made certain oral representations to the Regensburgers. He assured the Regensburgers that he had special expertise with Chinese adoptions, that they would get the child they wanted, and that he had connections with the Director of the China Adoption Cen-

ter ("the Center"). The Regensburgers relied on these representations.

Between January and August 1995, Lubowich advised the Regensburgers on the paperwork the Center required. Renee Lubowich also assisted with the preparation of the paperwork. Once the Regensburgers completed the necessary forms, Kenneth Lubowich reviewed the paperwork to ensure it met the requirements of the Center. Lubowich forwarded these documents to the Center in August 1995. In September 1995, the Center forwarded a referral of a three year old girl, Yang Chun Hua ("Yang") for potential adoption by the Regensburgers. The referral consisted of a medical report and a picture of the child. Lubowich forwarded these documents, along with a formal Consulting Agreement ("Agreement") to the Regensburgers.

Lubowich advised the Regensburgers that they had the right to refuse the referral, but that if they did so, he was unsure when the next child would become available. Lubowich also advised the Regensburgers that China had a policy that requires a family that already has a natural child to adopt a child with special needs. Lubowich explained that the Center informed him that the special needs requirement would be met if prospective parents adopted a child over two years old. The Regensburgers accepted the referral and signed the Agreement with CAC.

The services provided by CAC were outlined in the Agreement entered into by the Regensburgers and CAC on September 8, 1995. Under the Agreement, CAC agreed to: (1) consult and advise the Regensburgers concerning the necessary documentation and authentication of such documentation required for Chinese adoptions; (2) forward the documentation to China; (3) act as a liaison between the Regensburgers and translators to secure the required notarized translations of the documentation; (4) receive a summary of available medical records, if any, and personal histories provided by Chinese authorities; and (5) provide assistance to the Regensburgers in connection with the adoption while the Regensburgers are in China, and relay information and documentation that is available in the public record. It is undisputed that CAC provided many of these services prior to the time the parties signed the Agreement. The Regensburgers also performed part of their responsibilities under the Agreement prior to its signing, including paying the Agreement price of $500.

The Agreement provides that information received from the Chinese government might not be complete or accurate and in most cases would not be detailed or elaborate. The Agreement notes that there may be little or no information available concerning a child's history and that CAC made no representations with regard to the accuracy of any information on children the Chinese government identified for adoption. The Agreement also states that the adoption process is subject to great risks and that there can be no assurances concerning the outcome of an adoption, including the child's health, intelligence, or other attributes. Accordingly, the Agreement provides that the Regensburgers assume all risk attendant to proceeding with an adoption subject to limited information and assume all risk concerning the outcome of the adoption. Finally, the Agreement states that the Regensburgers voluntarily, irrevocably, and unconditionally release CAC and its employees from any and all liability related to the adoption process.

On September 11, 1995, the Regensburgers used CAC's travel services to arrange a trip to China. On September 14, 1995, the Regensburgers went to China to adopt Yang. While they were in China, Lubowich's agent assisted the Regensburgers. The Regensburgers met Yang, and on September 20, 1995, they made a videotape of the orphanage director verifying Yang's birth date. On September 25, 1995, the Regensburgers called the orphanage to again confirm Yang's birth date. At any time, the Regensburgers could have refused the referral, but instead they formally adopted Yang. On September 28, 1995, the Regensburgers returned to the United States with their newly adopted daughter.

Between September and November 1995, the Regensburgers wrote and called many friends and colleagues, including Lubowich, to express their happiness with their adopted daughter. However, in November 1995, after taking Yang to several doctors, the Re-

gensburgers learned that she was not three years old but was in fact between six and eight years old and mentally and physically delayed. The Regensburgers placed Yang for readoption in February 1996.

## II. ANALYSIS

### A. Summary Judgment Standard

We review a district court's grant of summary judgment de novo, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & W. Ry. Co.,* 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. Breach of Contract Claim

CAC and the Lubowiches argue that they did not breach the terms of the Agreement because the Regensburgers, according to the terms of the Agreement, assumed the risk and waived liability for damages arising out of the adoption. The relevant contractual provisions read as follows:

> [The Regensburgers] acknowledge and understand that there will be limited information or no information available concerning a child's history and Consultant makes no representations with regard to the accuracy of any information contained

in the files of children identified by Chinese authorities; accordingly, the [Regensburgers] will decide the selection of their child based on limited information and [the Regensburgers] assume[ ] all risks attendant to proceeding on this basis.

> • • • • •

> [The Regensburgers] agree and acknowledge that the adoption process is subject to great risk considering the human and emotional and subjective factors which are present, and there can be no assurances of any kind, nature, or description concerning the outcome of an adoption, including, but not limited to, the child's health, intelligence, or other attributes which would be critical to [the Regensburgers].

> • • • •

> In view of the aforesaid considerations, [the Regensburgers] hereby voluntarily, irrevocably and unconditionally release and forever discharge Consultant, its officers, directors, agents and associates from any and all claims, demands, causes of action, damages, judgments, decrees, costs, attorneys' fees, expenses or other liability arising directly or indirectly out of any alleged or actual breach of the representations, covenants and obligations of Consultant, its officers, directors, agents and associates as set forth in this Agreement or arising out of the relationship between Consultant and: (i) [the Regensburgers]; (ii) Agency; (iii) [the Regensburgers] and Agency.

> • • • • •

> Entire Agreement. [The Regensburgers] and Consultant acknowledge, recognize and accept that this Agreement contains the entire understanding with respect to the matters contained herein and that it supersedes all prior agreements and understandings.

The contractual language is very explicit; thus the Regensburgers must find a way out of the contractual language to avoid summary judgment.

The Regensburgers have made such an attempt. They argue that they should not be held to the terms of the Agreement because performance preceded execution of the Agreement. According to their argument, a

valid waiver cannot be executed after performance has been completed. In the alternative, the Regensburgers argue that the Agreement is void for one or more of the following reasons: the Agreement is illusory; the Agreement was fraudulently induced; or the Agreement is void because it violates the Illinois Adoption Compensation Prohibition Act, 720 Ill. Comp. Stat. 525 ("Adoption Act").

▮ After reviewing the relevant evidence, we agree with the conclusions drawn by the district court. The Regensburgers attempt to avoid the waiver provision by arguing that "defendants cannot rely on a purported waiver which took place after performance was completed." They provide no citation in support of this proposition. Regardless of whether this statement is an accurate reflection of contract law, however, this proposition does not apply in the present case. The contract was not completely performed at the time it was signed—the Agreement requires that CAC assist the Regensburgers while they are in China, and at the time the Agreement was signed, the Regensburgers had not gone to China and received assistance from CAC. Additionally, the Regensburgers agreed to cooperate concerning any post-adoption follow-up visits and reports with the designated adoption agency, Lutheran Family Services, and with Chinese agency representatives. Clearly the Regensburgers could not perform this promise prior to signing the Agreement since the adoption had yet to occur. Since performance did not precede execution of the waiver, we fail to find this argument applicable.

▮ The Regensburgers also argue that the Agreement was a memorialization of the bargain the parties had already entered into, as evidenced by the fact that the Agreement was almost fully performed when it was signed. They then argue that the memorialization was inaccurate because Lubowich promised that he could get them a child that met their needs. Thus the Regensburgers urge the court to ignore the contractual language and to enforce the understanding of the parties prior to signing the Agreement. The problem with this argument is that the Agreement contains a standard "merger" or "complete understanding" clause that explicitly states that the Agreement supersedes all prior agreements and understandings. While not dispositive, "the presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them." *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 569 (7th Cir. 1993). If there is some reason to believe that the writing does not represent the complete agreement of the parties, the court may allow parol evidence to establish the complete understanding. *See, e.g., id.* at 569–70 (finding that contract at issue did not reflect complete agreement between parties because it failed to include essential terms such as subject matter, prices, products, services, software, etc.). There is no reason to believe that the Agreement is incomplete. The Agreement contemplates all of the essential services and clearly sets forth the responsibilities of both parties. The language is simple and straightforward. The merger clause was not hidden in fine print, nor was it written in ambiguous language. The Regensburgers had the opportunity to review the Agreement at length, since the Agreement was mailed to their home in order for them to sign it. In short, we have no reason to believe that this Agreement did not represent the complete understanding of the parties. After-the-fact disappointment with the results of a contract is not a ground for nullifying the contract's express terms. We therefore decline to allow parol evidence to establish the terms of any prior agreements. *See Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1133–34 (7th Cir.1994).

▮ The Regensburgers' arguments that the Agreement is void are similarly unavailing. First they argue that the Agreement is illusory. We take this to mean that CAC's promise of performance was illusory, and therefore the Agreement is void. An illusory promise is not sufficient consideration to support a contract. *See Preferred Enteral Sys., Inc. v. Central Home, Inc.*, 277 Ill.App.3d 414, 213 Ill.Dec. 917, 921, 660 N.E.2d 174, 178 (1995); *W.E. Erickson Const., Inc. v. Chicago Title Ins. Co.*, 266 Ill.App.3d 905, 204 Ill.Dec. 431, 434, 641 N.E.2d 861, 864 (1994). "An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not

promised to do anything.... An illusory promise is also defined as one in which the performance is optional." *W.E. Erickson Const., Inc.*, 204 Ill.Dec. at 434, 641 N.E.2d at 864 (citations omitted). We find no illusory promises in the Agreement between CAC and the Regensburgers. CAC agreed to provide several services to the Regensburgers, many of which were completed prior to the contract signing. However, CAC promised to assist the Regensburgers while they were in China, and this could not have been completed prior to the contract signing. Thus CAC did promise to do something, performance of the promise was not optional, and this promise of performance is sufficient consideration for the Agreement.

 Next the Regensburgers argue that they were fraudulently induced to sign the Agreement by Lubowich's assertions that they would receive the child they wanted. Fraudulent inducement may invalidate a contract. *See Phil Dressler & Assocs., Inc. v. Old Oak Brook Inv. Corp.*, 192 Ill.App.3d 577, 139 Ill.Dec. 629, 633, 548 N.E.2d 1343, 1347 (1989); *Warner v. Lucas*, 185 Ill.App.3d 351, 133 Ill.Dec. 494, 495, 541 N.E.2d 705, 706 (1989). "In order to constitute fraud in the inducement, the defendant must have made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. The plaintiff must also show his reasonable belief in and reliance on the statement to his detriment." *Phil Dressler & Assocs., Inc.*, 139 Ill.Dec. at 633, 548 N.E.2d at 1347 (citing *Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263 (1985)). Many of the elements are absent in this case but the one most clearly missing is reasonable reliance. Under Illinois law, the Regensburgers must establish their reasonable reliance by clear and convincing evidence. *See National Republic Bank v. National Homes Const. Corp.*, 63 Ill.App.3d 920, 21 Ill.Dec. 80, 83, 381 N.E.2d 15, 18 (Ill.App. Ct.1978). The Regensburgers fail under this burden. A party who could have discovered the fraud by reading the contract, and in fact had an opportunity to do so, cannot later be heard to complain that the contractual terms bind her. *See Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir.1995) (applying Illinois law); *Belleville*

*Nat'l Bank v. Rose*, 119 Ill.App.3d 56, 74 Ill.Dec. 779, 781, 456 N.E.2d 281, 283 (1983). As stated by the Illinois Appellate Court:

> One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement.... And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations.

*Leon v. Max E. Miller and Son, Inc.*, 23 Ill.App.3d 694, 320 N.E.2d 256, 260 (1974).

In the case before us, it is difficult to believe that the Regensburgers could have relied on the oral representations in the face of the clear and unambiguous language in the Agreement. At the very least, the contractual language should have given the Regensburgers a reason to question the prior representations. We conclude that the Regensburgers cannot establish the necessary element of reasonable reliance, and therefore their assertion of fraudulent inducement must fail. *See Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1058–59 (7th Cir.1988).

 The Regensburgers' final attempt to avoid the contractual language is to allege that the Agreement violates the Adoption Act. The Adoption Act provides:

> No person and no agency ... except a child welfare agency as defined by the Child Care Act of 1969, as now or hereafter amended ... shall request, receive or accept any compensation or thing of value, directly or indirectly, for placing out of a child.

720 Ill. Comp. Stat. 525/1. The Act defines "placing out" as follows:

> [T]o arrange for the free care of a child in a family other than that of the child's parent, stepparent, grandparent, brother, sister, uncle or aunt or legal guardian, for the purpose of adoption or for the purpose of providing care.

720 Ill. Comp. Stat. 525/3. We find no evidence that CAC was engaged in "placing out" children. The Agreement specifically states that CAC is not a placement or adoption agency, and even requires the prospective parents to engage the services of an adoption agency. The Adoption Act was meant to "prevent profiteering in the placement of children and to eliminate so-called 'baby markets' and 'baby brokers.'" *People v. Schwartz,* 64 Ill.2d 275, 1 Ill.Dec. 8, 11, 356 N.E.2d 8, 11 (1976). CAC offers support and travel services for persons wishing to adopt children from China, but CAC does not act as the adoption agency for those children. While it is true that *Schwartz* states that "[a]ll others [than child welfare agencies] are prohibited from acting as paid intermediaries in the adoption process," *id.,* 1 Ill.Dec. at 11, 356 N.E.2d at 11, the kind of service CAC provided does not fall within this meaning of "paid intermediary." Based on the *Schwartz* court's interpretation of legislative intent, the Illinois legislature was targeting "baby brokers"—those persons who would claim they could secure a child from a family, or that they could find adoptive parents for a child, for a cost. Clearly that is not the kind of service CAC provided. The Regensburgers paid only $500 for CAC's consulting services. The remainder of the monies paid to CAC was for travel arrangements and travel expenses; they paid no money for placement. This is a far cry from the "baby brokering" the Act was intended to target. The Agreement, therefore, does not violate the Adoption Act.

The Regensburgers' attempts to extricate themselves from the contractual language are unpersuasive. Thus the contractual provisions govern, and the Regensburgers cannot succeed on a claim for breach of contract.

### C. Fraudulent Misrepresentation and Negligent Misrepresentation Claims

■■■■ We have held that the contractual provisions apply and therefore the Regensburgers have relinquished their right to sue CAC and the Lubowiches. The breadth of the waiver and release clause forecloses the Regensburgers' claims for fraudulent and negligent misrepresentation. However, even if these provisions did not bar these claims,

the claims would still fail. Reasonable reliance is a necessary element for both fraudulent misrepresentation and negligent misrepresentation. *See Gerill Corp. v. Jack L. Hargrove Builders, Inc.,* 128 Ill.2d 179, 131 Ill.Dec. 155, 161, 538 N.E.2d 530, 536 (1989) (fraudulent misrepresentation); *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.,* 114 Ill.2d 278, 102 Ill.Dec. 306, 310, 499 N.E.2d 1319, 1323 (1986) (same); *Foster v. Alex,* 213 Ill.App.3d 1001, 157 Ill.Dec. 778, 781–82, 572 N.E.2d 1242, 1245–46 (1991) (negligent misrepresentation). As described above, the Regensburgers cannot establish that they reasonably relied on the pre-contract promises when the contractual language was so explicitly to the contrary. Therefore, the district court properly granted summary judgment on the fraudulent and negligent misrepresentation claims in favor of CAC and the Lubowiches.

### D. Motion for Sanctions for Frivolous Appeal

■■■■ Federal Rule of Appellate Procedure ("Fed.R.App.P.") 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Sanctions are justified "when the result is obvious or when the appellant's argument is wholly without merit." *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 396 (7th Cir. 1992). While we find ourselves in complete agreement with the district court's reasoning and disposition of the issues, we do not believe that the appeal was so lacking in merit as to justify sanctions. We therefore decline to enter sanctions against the Regensburgers.

Because we find the Regensburgers' arguments unpersuasive, we AFFIRM the award of summary judgment on all claims in favor of CAC and the Lubowiches. We Deny the motion for sanctions under Fed.R.App.P. 38.