Alice Joanne TULLOCK, Individually
and on Behalf of All Those Similarly
Situated, Plaintiffs,

v.

KMART CORPORATION EMPLOYEE
PENSION PLAN, Defendant.

No. 99–CV–0289 DRH.

United States District Court,
S.D. Illinois.

June 28, 2001.

Steven A. Katz, Douglas R. Sprong, Carr, Korein et al., Swansea, IL, William K. Carr, Law Offices of William K. Carr, Denver, CO, for plaintiffs.

Charles E. Reis, IV, Brown & James, St. Louis, MO, James H. Cox, Paul, Hastings et al., for defendants.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. *Factual Background*

Alice Joanne Tullock filed suit in this Court against the K–Mart Corporation Employees Retirement Plan ("the Plan"), the administrator of an employee benefit plan under ERISA. Tullock was a participant in the Plan who received a lump sum distribution of retirement benefits in 1998. Tullock alleges that this lump sum distribution and the distribution of others' lump sums violated ERISA because they were computed using the wrong interest rate. On February 13, 2001, the Court certified a class consisting of all participants in the Plan who received a lump sum after January 31, 1998, and whose lump sum was computed using the January 1997 GATT rate (Doc. 104).

Tullock worked for K–Mart from February 23, 1970 to December 1997. She accrued retirement benefits under the Plan while she was so employed until January 1, 1996, when K–Mart froze accruals under the Plan. In November 1997 K–Mart introduced a Voluntary Early Retirement Pro-

gram (the "VERP") pursuant to which Plan participants could receive a lump sum distribution of their accrued retirement benefits. The VERP is contained in the "Third Amendment" to the Plan. For the vast majority of VERP participants, lump sum distributions were computed by multiplying an estimated salary figure by a multiplier based on the participant's age and years of service. However, participants whose frozen Plan benefits exceeded their VERP lump sums, like Tullock, received lump sums based on the frozen benefits. In computing these "non-VERP" lump sums, Section I.1 of the Third Amendment of the Plan states that the interest rate is the yield rate for 30 year Treasury constant maturity securities (also known as the "GATT rate") "for the month of January preceding the Plan Year that contains the distribution date."[1] Pursuant to Plan § I.32, the Plan Year is the period of twelve consecutive months beginning on February 1 and running to January 31. Thus, if a participant's "non-VERP" lump sum distribution occurred between February 1, 1998 and January 31, 1999, the Plan language clearly dictates that the rate to be used to compute that lump sum is the GATT rate for January 1998.

Tullock elected to participate in the VERP, but as noted her frozen Plan benefits exceeded her VERP lump sum. The interest rate the Plan used to compute Tullock's lump sum was the January 1997 GATT rate of 6.83%. The January 1998 GATT rate was 5.81%. If the Plan had used the January 1998 GATT rate to compute Tullock's lump sum, her distribution would have been several thousand dollars

larger than it was. *See Costantino v. TRW, Inc.*, 13 F.3d 969, 972 (6th Cir.1994) (explaining the use of interest rates for discounting annuity payments to pay lump sums). Count II[2] of Tullock's Second Amended Complaint alleges that her lump sum and the lump sums of the Class members were distributed in the February 1, 1998 to January 31, 1999 Plan Year, and that the Plan therefore used the wrong GATT rate to compute these lump sums (Doc. 28).

The Plan initially admitted in its Answers to both the First and Second Amended Complaints that Tullock's lump sum was distributed in February 1998 (Docs. 9 & 32). The Plan also admitted to this distribution date in the parties' Joint Stipulation of Facts submitted with Plaintiffs' summary judgment packet (Doc. 75). However, in its reply in support of its motion for summary judgment, the Plan introduced affidavit evidence suggesting that Tullock's check and the checks of the Class members, although dated February 1, 1998, were sent to the Post Office for mailing on January 31, 1998.[3] (Doc. 82, Exhibits A & B). Specifically, a sub-vendor for K–Mart involved in the processing of certain retirement checks stated that a large quantity of such checks were delivered to another sub-vendor for pre-sorting on January 30, that this second sub-vendor billed the first sub-vendor on January 31, and that the second sub-vendor typically did not submit to the first sub-vendor a bill until after it had delivered a job to the Post Office (Doc. 82, Exhibit B). The affiant, David Rapier, had no personal knowledge of whether the checks were

---

1. Elsewhere, the Plan states that the interest rate to be used for computing lump sums is the GATT rate "for the last month prior to the Plan Year of distribution." Plan Document, § I.1.

2. Counts I and III were voluntarily dismissed with prejudice by stipulation of the parties (Doc. 69).

3. The Court granted Defendant leave to amend its Answer to the Second Amended Complaint.

actually mailed on January 31, 1998. The Plan did not introduce any other credible evidence as to the date the checks were mailed. It is undisputed that all of the Class members' checks were dated February 1, 1998 (Doc. 98, Exhibit 1).

The parties have submitted cross motions for summary judgment on the issue of liability (Docs. 71 & 79). On June 12, 2001, the Court heard oral argument on the motions. For the following reasons, the Court denies Defendant's motion for summary judgment and grants Plaintiffs' motion for summary judgment.

## II. *Summary Judgment Standard*

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir.1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997)(citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir.1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, the non-movant may not simply rest upon the allegations in his pleadings. Rather, the non-moving party must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670–71 (7th Cir.

1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1124 (N.D.Ill.1995). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 933 (7th Cir.1997)(citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Accord *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir.1996), cert. denied, 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994).

Because this case is brought under ERISA, federal common law principles govern. *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 864–65 (7th Cir.1995)(citing *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 307 (7th Cir.1992)). These principles direct a court to construe terms of ERISA plans "in an ordinary and popular sense as would a person of average intelligence and experience." *Swaback v. Ameritech*, 103 F.3d 535, 540–41 (7th Cir.1996).

## III. *Analysis*

■ Under ERISA and the K–Mart Pension Plan, a participant's normal retirement benefit is a life annuity beginning at age 65. Paying a lump sum requires determining the present value of that life annuity for the particular participant. In

general, present value is determined by using an interest rate to discount for the time value of money, and a mortality table to predict how long the participant will have the use of the money beginning on the annuity starting date and ending at his or her death. *E.g.*, *Costantino*, 13 F.3d at 972; Internal Revenue Code § 417(e), 26 U.S.C. § 417(e)(setting forth the minimum mortality table and interest rates that may be used). The higher the interest/discount rate, the lower the lump sum.

■ Because the Plan provides that the interest rate to be used in computing a participant's lump sum distribution is the GATT rate "for the month of January preceding the Plan Year that contains the distribution date," the critical issue in this case is the distribution date of the Class members' lump sums. If the answer is January 31, 1998, the date on which Defendant contends the lump sum checks were mailed, then the Plan's use of the January 1997 GATT rate was appropriate. If the answer is February 1, 1998, the date of the checks, then the Plan should have used the lower January 1998 GATT rate to compute the Class members' lump sums.

The Court finds as a matter of law that the checks at issue were distributed on February 1, 1998. As noted above, it is undisputed that each Class member's check was dated February 1, 1998. In the Court's view, this fact is dispositive. A check dated February 1, 1998 cannot be considered to have been distributed on some date prior to February 1, 1998, if for no other reason than the payee of the check does not have access to the funds represented by the check until February 1, 1998. 810 ILCS 5/3–113(a) ("[A]n instrument payable on demand is not payable before the date of the instrument"). If the

Plan wanted to "distribute" the Class members' checks before January 31, 1998, then it should have dated them on or before January 31, 1998 so as to provide the payees with access to the money on or before that date.

At oral argument, the Court asked Defendant's counsel to explain why the checks were dated February 1, 1998 if in fact they were (or were intended to be) distributed in the 1997 Plan Year. Counsel contended that it was K–Mart's long-standing practice to date lump sum distribution checks on the first day of the month. However, Plaintiffs directed the Court's attention to a list of several hundred VERP participants who received lump sum checks dated February 16, 1998, and various dates other than the first day of the month. Thus, Defendant's explanation does not comport with the evidence in this case.

The Court also rejects Defendant's argument that this is solely a matter of plan interpretation, and that the Court should therefore defer to Defendant's determination that "distribution date" means the date of mailing unless that determination is "downright unreasonable." The question of when the checks were distributed is a factual inquiry, not a matter of plan interpretation.[4] Defendant cannot alter the fact that the checks were dated and thus distributed on February 1, 1998 by claiming it has discretion to determine what the word "distribution" means. If this were true, ERISA plans could avoid any inconvenient set of circumstances by "interpreting" facts to fit the desired outcome. Even assuming this were strictly a case of plan interpretation, the Court finds an interpretation that results in checks

---

**4.** Defendant's citation to a Pension Benefit Guarantee Corporation regulation to bolster its date of mailing argument is unpersuasive.

The PBGC regulations are only applicable in the context of a plan termination and/or where the PBGC is a party.

dated February 1, 1998 being "distributed" prior to that date to be unreasonable, as well as arbitrary and capricious.

The Court recognizes that it is imposing a bright line in this case. As Defendant's counsel noted at oral argument, if the checks had been dated January 30, 1998 and mailed on January 31, 1998, the Class members would not have received their checks any faster, and Plaintiffs would have no case. The flaw in this otherwise logical argument is that it ignores the language of the Plan and the law of ERISA. It is indisputable that a pension plan must adhere to its own provisions. *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). In *Curtiss–Wright*, the Supreme Court rejected a pension plan's argument that a plan amendment could be adopted without compliance with the plan's amendment procedure. The Court stated:

> ERISA ... follows standard trust law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level.

514 U.S. at 85, 115 S.Ct. 1223.

Having specified the interest rate that must be used to compute lump sums, the Plan cannot now complain about having to follow that procedure. *See Albedyll v. Wisconsin Porcelain Company Revised Retirement Plan*, 947 F.2d 246 (7th Cir. 1991). Allowing the Plan to ignore this requirement because it is "only" one day is counter to ERISA. As Defendant's counsel conceded at oral argument, if the checks had been dated March or April 1998 but allegedly mailed on January 31, 1998, it could not be argued that the checks were distributed in the Plan Year ending on January 31, 1998. The Court appreciates the temporal difference between February 1 and March 1, but under the terms of the Plan and the relevant case law, there is no legal distinction between the two dates for purposes of determining the proper interest rate to be used to compute the Class members' lump sums.

Finally, even assuming the Court believed the date of mailing was relevant, the Plan failed to prove that the Class members' checks were mailed on January 31, 1998 as opposed to the date of the checks. Rapier's self-serving affidavit is not based on personal knowledge as to when the Class members' checks were mailed. Instead, the affidavit is based on his speculation that another party (who is not before the Court by affidavit or otherwise) most likely would not have invoiced Rapier's employer on January 31, 1998 if it had not delivered the checks to the Post Office for mailing. Such conclusory allegations and self-serving affidavits, that are not supported by the record, are insufficient to preclude summary judgment. *Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir.1997); *see also Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988).

Nor can the Court ignore the Defendant's prior admissions as to the Plan Year in which Tullock's distribution was contained. On three separate occasions, one in the context of a joint stipulation of undisputed facts, the Plan admitted Tullock's lump sum was distributed in February 1998. The Plan initially claimed that the February 1, 1998 date of distribution was excusable as being caused by its own "administrative delay." After Plaintiffs' motion for summary judgment was fully briefed, the Defendant abandoned its administrative delay argument in favor of the argument that checks are "distributed" when mailed, and the checks at issue here were likely mailed on January 31, 1998.

The Court finds that the distribution date of the checks at issue is contained in

the February 1, 1998 to January 31, 1999 Plan Year. By operation of law, the Plan beneficiaries could not have received the funds by negotiating their checks prior to February 1, 1998. Thus, there was no distribution until February 1, 1998. Under such circumstances, the Plan language is clear that the January 1998 GATT rate should have been used to compute the Class members' lump sums, and the Plan arbitrarily and capriciously ignored its own provisions in using a different rate. *E.g., Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 419 (7th Cir.1998)(ERISA § 1102(a)(1) requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument").

### IV. *Conclusion*

Accordingly the Court **DENIES** Defendant's motion for summary judgment (Doc. 79) and **GRANTS** Plaintiffs' motion for summary judgment on the issue of liability (Doc. 71). The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Plaintiffs and against Defendant on the issue of liability. The only issue remaining in this case is the question of damages. The Court directs Plaintiffs to submit their memorandum regarding damages, prejudgment interest and any other issue they believe is necessary for the entry of a final order on or before August 3, 2001. Defendant shall respond to Plaintiffs' brief on or before August 24, 2001, and Plaintiffs shall file their reply, if any, on or before August 31, 2001. The Court **SETS** this matter for a hearing on damages on *September 28, 2001 at 9:30 a.m.*

**IT IS SO ORDERED.**