NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2008[*]
Decided May 28, 2008

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3461

| | |
|---|---|
| DENNY PATRIDGE and JUDY PATRIDGE, | Appeal from the United States District Court for the Central District of Illinois. |
|     *Plaintiffs-Appellants*, | |
| | No. 05-2172 |
|     *v.* | |
| | Michael P. McCuskey, |
| J.K. HARRIS & COMPANY, LLC, et al., | *Chief Judge*. |
|     *Defendants-Appellees*. | |

**O R D E R**

In this case brought pursuant to the district court's diversity jurisdiction, Denny and Judy Patridge sued J.K. Harris & Company, LLC, claiming that it breached its contract with them and also that it and two of its employees, Bobbie Mickey and Larry Phillips,

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

defrauded them. The district court granted summary judgment in favor of J.K. Harris, Mickey, and Phillips, and the Patridges appeal. We affirm.

The relevant facts are not in dispute. Denny Patridge owns an insurance business. In the mid-1990s he diverted the income from his business to an off-shore trust, which in turn transferred the funds to a series of other trusts. The last trust in the series purported to "loan" the money back to Denny Patridge, although he never repaid these "loans." Neither the Patridges (who file joint tax returns) nor the trusts paid taxes on any of this income. In 1999 the Patridges received two letters from the Internal Revenue Service requesting information about the trusts and telling them that their 1996 and 1997 tax returns were going to be audited. The Patridges refused to provide any information and did not cooperate with the audit.

In January 2000 the Patridges received a Notice of Deficiency from the IRS, assessing them approximately $177,000 in back taxes and penalties. The notice also informed them that they had 90 days to petition the Tax Court for a redetermination of the deficiency and that if they failed to do so, they would have to pay the full amount.

In April 2000 the Patridges discussed their tax situation with Craig Carmichael and Bobbie Mickey of J.K. Harris, a tax resolution company. Carmichael and the Patridges signed an Engagement Agreement, which states that J.K. Harris "will represent you with the IRS in regard to your income tax audit for the year(s) '96 '97 <98> (Appeal)." It goes on to describe the work J.K. Harris was to perform:

> Review Business Trust - Appeal IRS Decision on Trust (If Applicable)
> ---Prepare for Audit Appeal (see above)
> Respond to IRS by 4/27/00 — Notify of P.O.A. ++
> Send 433A/B for possible pre-qualification of O.I.C. @ end of appeals.

The acronym "E.M.T." appears in the margin of the Agreement.

Denny Patridge testified at his deposition that when he entered into the contract, he understood that J.K. Harris would "appeal" the IRS's determination by requesting an audit reconsideration from the IRS. An audit reconsideration allows the IRS to reexamine an assessment of a tax deficiency if the taxpayer has not agreed to pay the assessment and the Tax Court has not issued a final determination of tax liability. *See* Internal Revenue Manual § 5.1.12.9.1; *see also Baltic v. Comm'r*, 129 T.C. 178, 183 (2007). The Patridges both testified at their depositions that they did not want to challenge the deficiency in the Tax Court because one of Denny Patridge's colleagues, who had established trusts similar to the Patridges',

had a bad experience there and was ordered to pay a sanction on top of his deficiency. They conveyed this to Carmichael, whose contemporaneous notes reflect the Patridges' position that they "<u>DO NOT WANT TAX COURT</u>."

J.K. Harris took steps to compile the information necessary to request an audit reconsideration. Larry Phillips met with IRS employees to discuss whether they would be amenable to reopening the Patridges' audit. He then instructed the Patridges to draft a letter to the IRS formally requesting a reopening. It is unclear whether the letter was sent, but the Patridges did send a letter to the Tax Court stating that they did not wish to file a petition to reassess their deficiencies. After reviewing the Patridges' information about their trusts, Phillips advised them that the IRS likely would conclude that the trust structure was illegitimate, and so he advised the Patridges to file amended tax returns for 1996 and 1997. The couple disagreed and instead hired an attorney who advised them not to file amended tax returns—advice that they have followed. The Patridges stopped cooperating with J.K. Harris, and they have not received an audit reconsideration.

Eventually Denny Patridge was indicted for, and found guilty of, tax evasion, wire fraud, and money laundering. He was sentenced to 60 months' imprisonment and ordered to pay $168,000 in restitution. We upheld his conviction. *United States v. Patridge*, 507 F.3d 1092 (7th Cir. 2007).

The Patridges then sued J.K. Harris, Mickey, and Phillips. They claim that J.K. Harris breached the Engagement Agreement by failing to file a petition with the Tax Court seeking a redetermination of the amount of their deficiency. They also claim that J.K. Harris and Mickey committed fraud in the inducement by duping them into signing the Agreement on the false premise that J.K. Harris would represent them in the Tax Court. Finally they claim that J.K. Harris, Mickey, and Phillips defrauded them by lying to prevent them from discovering that J.K. Harris had breached the Agreement.

The district court granted summary judgment to J.K. Harris, Mickey, and Phillips. The court assumed that the contract was ambiguous, but it concluded that the uncontroverted extrinsic evidence showed that the parties agreed to pursue audit reconsideration rather than to proceed in the Tax Court. Thus, the court concluded that J.K. Harris did not breach the Engagement Agreement by failing to file a petition in the Tax Court. It also determined that the Patridges had not put forward any evidence that Mickey or Phillips had made any false statements, thus dooming the fraud claims.

Our review of the district court's decision is de novo, and we view all facts and draw all reasonable inferences in favor of the Patridges. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). All parties agree that Illinois law controls their dispute.

The Patridges first argue that the district court erred in assuming that the Engagement Agreement was ambiguous and in concluding that J.K. Harris did not undertake to represent the Patridges in the Tax Court. In Illinois, whether a contract is ambiguous is a question of law. *Regency Commercial Assocs., LLC v. Lopax, Inc.*, 869 N.E.2d 310, 316 (Ill. App. Ct. 2007). Illinois courts will conclude that a contract is ambiguous "if it is reasonably or fairly susceptible to more than one interpretation." *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1137 (7th Cir. 2001); *see Intersport, Inc. v. Nat'l Collegiate Athletic Ass'n*, No. 1-07-0626, 2008 WL 881295, at *5 (Ill. App. Ct. Mar. 26, 2008). If the contract is ambiguous, the parties may submit extrinsic evidence, including evidence of what they discussed at the time they entered into the contract, to decipher its meaning. *See Regency*, 869 N.E.2d at 316. Generally, it is the job of the trier of fact to weigh the extrinsic evidence, *see Cont'l Cas. Co.*, 427 F.3d at 1041; *see also William Blair & Co. v. FI Liquidation Corp.*, 830 N.E.2d 760, 769 (Ill. App. Ct. 2005), but if the extrinsic evidence is undisputed, the meaning of an ambiguous contract can be decided as a matter of law, *see Cont'l Cas. Co.*, 427 F.3d at 1041.

The Engagement Agreement is ambiguous because it is not clear by its terms what actions J.K. Harris agreed to undertake on behalf of the Patridges. But we agree with the district court that summary judgment was warranted because the undisputed facts show that J.K. Harris did not agree to petition the Tax Court. Both Denny and Judy Patridge admitted that they told Carmichael that they did not want to proceed in the Tax Court because they were afraid the Tax Court would treat them too harshly. Denny Patridge testified that, instead, he intended that J.K. Harris pursue audit reconsideration with the IRS. Moreover, Carmichael's contemporaneous notes of his meetings with the Patridges corroborate the Patridges' testimony. The Patridges offered no evidence that they told anyone at J.K. Harris to file a petition in the Tax Court or that any employee promised to do so. Furthermore, there is no evidence that the Patridges complained when the deadline for petitioning the Tax Court came and went without action. To the contrary, they sent a letter to the Tax Court stating they did not want to use that avenue to challenge their tax liability. And throughout the parties' relationship, J.K. Harris pursued the audit reconsideration strategy—Phillips met with the IRS, reviewed the Patridges' financial records, and advised them to file amended tax returns—without complaint or comment from the Patridges.

The Patridges argue that this interpretation would read the phrase "Respond to IRS by 4/27/00" out of the contract, an outcome Illinois courts would disfavor. *See Regency*, 869 N.E.2d at 316. They contend that this date was the deadline for filing a petition with the Tax Court and that the parties would not have included it unless they intended J.K. Harris to file a petition in the Tax Court. But this argument misapprehends the relationship between the Tax Court and the IRS. The Tax Court is not affiliated with the IRS, *see* 26 U.S.C. § 7441

(establishing the Tax Court as a court under Article I of the United States Constitution), and "responding to" the IRS is not the procedure for petitioning the Tax Court, *cf*. 26 U.S.C. § 6213(a). Furthermore, this date marked not only the last day to petition the Tax Court but also the day the IRS would have billed the Patridges for the deficiency. *See* 26 U.S.C. 6213(c). Thus the date is consistent with the Patridges' testimony that they wanted J.K. Harris to pursue an audit reconsideration.

The Patridges next insist that the term "E.M.T."—which all parties agree refers to J.K. Harris's Emergency Management Team—evinces J.K. Harris's assurance that it would bring a challenge in the Tax Court. The Patridges make much of the word "emergency" and insist that the only emergency they were experiencing was the imminent deadline to file a petition in the Tax Court. But again, we cannot agree. The Patridges' tax situation had become dire—they were to be billed for their tax deficiency within days of retaining J.K. Harris. Nothing suggests that their dispute with the IRS had to be resolved by resorting to the Tax Court. Rather, the uncontroverted evidence shows that the parties agreed to handle the "emergency" not in the Tax Court but rather through audit reconsideration.

The Patridges further argue that the district court should not have granted summary judgment on their claims of fraud and fraud in the inducement. But they put forward no evidence that anything Mickey or Phillips told them was false. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998). As we already have said, the Patridges cannot establish that any J.K. Harris employee told them that the company would file a petition in the Tax Court. And although the Patridges insist that Mickey and Phillips lied "to cover up the breach and for no other reason," we already have determined that there was no breach, and thus there was nothing for Mickey or Phillips to "cover up."

AFFIRMED.