PHIL DRESSLER & ASSOCIATES, INC., Plaintiff-Appellant, v. OLD OAK BROOK INVESTMENT CORPORATION, Defendant-Appellee (Michael Butler, Defendant).

Second District   No. 2—89—0327

Opinion filed December 27, 1989.

Louis A. Varchetto, Joseph G. Skryd, Richard M. Guerard, and John J. Pcolinski, Jr., all of Guerard, Kalina, Musial, Ulrich & Varchetto, Ltd., of Wheaton, for appellant.

Dean A. Dickie and Michael J. Howlett, Jr., both of Phelan, Pope & John, Ltd., of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Phil Dressler & Associates, Inc., brings this interlocutory appeal pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) from an order of the circuit court of Du Page County entering summary judgment in favor of defendant, Old Oak Brook Investment Corporation, on counts II and III of plaintiff's complaint seeking specific performance and declaratory relief in connection with an alleged contract for the sale of certain real property.

On appeal, plaintiff contends that the circuit court erred in finding that its claims were barred by a release executed by plaintiff and defendant because a genuine issue existed as to a material fact, namely, whether the release was procured by fraud. Defendant responds that no genuine issue exists in this regard and summary judgment was properly entered. Defendant also contends that this court is without jurisdiction to review the summary judgment order, and accordingly, this appeal must be dismissed.

As this court's jurisdiction is in issue, we briefly recount the procedural history of this case. On May 23, 1988, plaintiff filed its three-count complaint against defendant and Michael Butler, who is not a party to this appeal. Plaintiff alleged that a contract between plaintiff and defendant provided defendant the option to purchase a certain

lot, after certain other lots were sold, subject to the right of Michael Butler or his sister to purchase the lot "for the purpose of consolidating his/her property for the use of himself or herself or his or her family." Plaintiff further alleged that defendant refused to sell the lot, indicating that Michael Butler had exercised his option, though it was known to defendant that Butler intended to purchase the property for resale rather than personal use. Plaintiff also alleged that defendant fraudulently induced it to execute a release from liability for claims on the contract. Count II was against defendant only and sought specific performance of the contract. Count III is against defendant and Butler and sought certain declaratory relief. Count I is against Butler only and alleged intentional interference with contractual relations.

Defendant moved for summary judgment on counts II and III on the basis of, *inter alia*, the release, contending that no genuine issue existed with respect to its validity. Following a hearing on the motion on July 13, 1988, the circuit court entered summary judgment in favor of defendant. The circuit court's order did not contain a finding of no just reason to delay enforcement or appeal of the order pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). Thereafter, on July 13, 1988, plaintiff filed a notice of appeal from the order. On July 19, 1988, on defendant's motion to clarify the July 13 order *nunc pro tunc*, the circuit court entered an order stating that the July 13 order was amended, *nunc pro tunc*, to include a finding of no just cause to delay enforcement or appeal.

On December 8, 1988, on defendant's motion, this court dismissed, for lack of jurisdiction, the appeal taken pursuant to the July 13, 1988, notice of appeal. Thereafter, on plaintiff's motion, the circuit court on March 7, 1989, entered an order finding, as of that date, no just cause to delay enforcement or appeal of the July 13, 1988, order. On March 31, 1989, plaintiff filed a notice of appeal from the July 13, 1988, order.

Defendant filed a motion in this court to dismiss the present appeal. We initially denied the motion, but defendant reiterated its position in its appellate brief. We note our firmly established obligation to consider our jurisdiction and dismiss an appeal if jurisdiction is found wanting. (*Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440, 490 N.E.2d 1252.) Having again considered the question, we conclude that jurisdiction is proper.

■ The July 13, 1988, order was a final judgment as to fewer than all of the parties and claims in an action involving multiple claims and parties. Pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), such an order is not appealable in the absence of an ex-

press finding of no just reason to delay its enforcement or appeal. (*Ferguson*, 111 Ill. 2d at 442, 490 N.E.2d at 1254.) Prior to its amendment, effective January 1, 1989, Rule 304(a) provided that the time for filing the notice of appeal shall run from the entry of the required finding. (107 Ill. 2d R. 304(a).) When an order contains the requisite finding, the affected party loses the right to appeal by waiting until the termination of the remainder of the case. *In re Johnson* (1985), 134 Ill. App. 3d 365, 368, 480 N.E.2d 520.

■ Here, the July 13, 1988, order did not contain the requisite finding and, hence, was not appealable at the time entered. It is undisputed that the notice of appeal filed on that day was premature and that the subsequent order of July 19, 1988, purporting to amend the July 13, 1988, order *nunc pro tunc* to include the finding could not cure the jurisdictional defect where the later order was not a correction of a clerical error but was an attempt to supply omitted judicial action. (See *Rauscher v. Albert* (1985), 138 Ill. App. 3d 799, 804-05, 485 N.E.2d 1362.) "The office of an order *nunc pro tunc* is only to supply some omission in the record of an order which was really made but omitted from the record. If an order is actually made by the court but there is a failure to enter it, the court may correct the mistake in failing to enter the order and make the record show the order which the court actually made as of the time it was made." (*People v. Rosenwald* (1915), 266 Ill. 548, 554, 107 N.E. 854, 856.) No court has a right, as attempted in the case at bar, to create an order by that method or to supply an order which was never, in fact, made. *Rosenwald*, 266 Ill. at 554, 107 N.E. at 856.

Defendant maintains, however, that while the addition of the finding was not effective *nunc pro tunc*, the finding was effectively entered on July 19, 1988, and the time for filing a notice of appeal began to run on that date and expired 30 days thereafter. Thus, defendant contends the instant appeal is not timely. Plaintiff responds that the July 19, 1988, order should be given no effect, and thus the requisite finding was first entered on March 7, 1989, such that plaintiff's notice of appeal filed on March 31, 1989, was timely.

■ We agree with plaintiff under the circumstances. It is apparent that the circuit court entered the July 19 order, at the behest of defendant, to cure the jurisdictional defect resulting from the premature notice of appeal. We do not believe the circuit court intended its order to have prospective effect if it could not properly be entered *nunc pro tunc*, and in the circumstances here, it would be manifestly unfair to give the order prospective effect. This is particularly true here where defendant successfully sought a dismissal of plaintiff's

first appeal to this court on the basis that the July 19 *nunc pro tunc* order could not validate the prior notice of appeal. We need not determine whether under other facts an order improperly entered *nunc pro tunc* can be otherwise effective from the time of entry.

The July 19, 1988, order was of no effect, and the July 13 order first became appealable on March 7, 1989; therefore, the instant appeal was timely filed.

Turning to the merits of this appeal, the pleadings, depositions, and affidavits establish the following facts. Plaintiff and defendant entered into an agreement pertaining to the development and marketing of certain real estate owned by defendant. The agreement provided that "[defendant] shall have the right during the term of this Agreement to purchase any lot for the sale of which a contract has not been entered into, for the scheduled price." The agreement also contained the following provision:

> "It is agreed that Lot 12 shall be offered for sale only after a binding contract for sale has been entered into for the other lots listed on Exhibit 'A'. Michael Butler and/or Jorie Butler Kent shall have an option any time prior to the signing of a binding contract for sale, to purchase the lot, for the purpose of consolidating his/her property for the use of himself or herself or his or her family. Any other lots in the Old Oak Brook subdivision owned by Owner, and not closed on contracts now pending, shall be added to Exhibit 'A' and shall become subject to this agreement."

On or about March 3, 1988, after all lots except lots 12, 14 and 15 had been sold, plaintiff offered to purchase lot 12. Plaintiff was informed by a letter from David Weber, an officer of defendant, that its offer was not accepted because lots 14 and 15 remained unsold. Thereafter, on March 10, 1988, plaintiff submitted offers to purchase lots 12, 14 and 15 and sent contract forms to defendant for execution. Defendant apparently executed the contract forms for lots 14 and 15 only. Phil Dressler, president of plaintiff, testified in his deposition that Weber told him that "[y]ou cannot buy Lot 12 because Michael Butler is going to exercise his option on Lot 12." The record contains a letter dated March 29, 1988, from plaintiff's attorney to defendant's attorney which stated in pertinent part, as follows:

> "This letter is to confirm a telephone conversation which I had with David Webber [*sic*] on March 29, 1988. At that time, he indicated to me that Michael Butler had not at this time made any decision regarding Lot 12 and that in the event Phil Dressler & Associates, Inc. did not wish to proceed with the

purchase of Lots 14 and 15 without Lot 12, that Old Oak Brook Investment Corporation was then requesting that Phil Dressler & Associates, Inc.'s signs be removed from the properties. I indicated to him as agent and attorney for Phil Dressler & Associates, Inc., that Phil Dressler & Associates, Inc. would not proceed on contracts for Lots 14 and 15 under the existing conditions and has withdrawn all offers for the purchase of Lots 12, 14 and 15."

On April 20, 1988, plaintiff and defendant executed a mutual release of any claims arising in connection with the development agreement. Phil Dressler testified in his deposition that, prior to signing the release, he asked George Milman, an officer of defendant, whether Michael Butler was going to exercise his option to purchase lot 12 exactly under the terms of the agreement and whether defendant had any "side deals." According to Dressler, Milman responded that Butler was going to exercise his option pursuant to the agreement and that no side deals existed. Milman stated in an affidavit that he had no knowledge of Butler's intentions and that he so advised Dressler.

Milman stated that he had no knowledge of any agreement between Michael Butler and Carol Shell respecting the sale of lot 12 to Shell. David Weber similarly stated in his affidavit that he was unaware of Butler's actual intentions and was unaware of any agreement between Butler and Carol Shell.

Shell testified at her deposition that she and Michael Butler had reached an oral agreement with respect to lot 12 whereby Butler agreed to exercise his option and resell the lot to Shell for a $25,000 profit. According to Shell, she informed David Weber of this agreement during a telephone conversation that took place during the first week of March 1988. Shell further testified that her agreement with Butler was never reduced to writing and the sale was never completed.

On May 23, 1988, a written agreement was executed for the sale of lot 12 to Michael Butler and Reetz Gammonley Corporation. The same day, plaintiff filed its complaint in this action, alleging that defendant breached the development agreement by failing to sell plaintiff lot 12 and that defendant fraudulently induced plaintiff to execute the release. Plaintiff sought declaratory relief and specific performance. The circuit court entered summary judgment in favor of defendant on the basis of the release executed by plaintiff and defendant.

Plaintiff contends that a genuine issue of material fact exists with

respect to whether the release was procured by fraud and is therefore invalid. Plaintiff further maintains that the release is invalid because of fraud in the inducement.

■ A release may be set aside if there is fraud in the inducement. (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 439, 437 N.E.2d 817.) In order to constitute fraud in the inducement, the defendant must have made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. The plaintiff must also show his reasonable belief in and reliance on the statement to his detriment. *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263.

Here, according to Phil Dressler's deposition testimony, in connection with the execution of the release, George Milman, an officer of defendant, stated in response to a question by Dressler that Michael Butler was going to exercise his option to purchase lot 12 according to the terms of the agreement. This testimony contradicts Milman's affidavit stating that he advised Dressler that he was unaware of Butler's intentions. According to Dressler, Milman further stated that defendant was not involved in any side deals. However, there is no evidence suggesting that the latter representation was untrue. Nevertheless, with respect to the representation that Butler was going to exercise his option in accordance with the agreement, there is evidence that, contrary to the representation, Butler was engaged in negotiations with Carol Shell for resale of the property and defendant knew of these negotiations.

While the statement of George Milman in his affidavit that he was unaware of any agreement between Butler and Shell is uncontradicted, a similar statement in David Weber's affidavit is contradicted by Carol Shell's deposition testimony that she told Weber of an agreement between Butler and herself. As Weber is an officer of defendant, his knowledge in this respect is properly imputed to defendant (see *People ex rel. Daley v. Warren Motors, Inc.* (1986), 114 Ill. 2d 305, 320, 500 N.E.2d 22), and his knowledge could properly supply the element of *scienter*. *Cf. People v. American Medical Centers of Michigan, Ltd.* (1982), 118 Mich. App. 135, 324 N.W.2d 782.

Defendant points out that the deal between Butler and Shell was never finalized. However, the representation was not as to this specific transaction, but rather, pertained generally to Butler's intent to exercise his option.

■ ■ Defendant contends that the representation cannot be considered fraud because it constituted a mere prediction of future con-

duct upon which plaintiff had no right to rely. We disagree. While misrepresentations as to something to be done in the future generally do not constitute fraud, a statement of matters in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation if it amounts to an assertion of fact. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 490-91, 429 N.E.2d 1267.) As related by Phil Dressler in his deposition testimony, Milman's representation was such an assertion of fact. Moreover, under the circumstances here, Milman's statement was, in substance, a representation as to Butler's present intention which was then a present fact.

■ Defendant further contends that plaintiff could not justifiably rely on defendant's representation. Defendant notes that reliance upon representations of others is not justified when the party so relying has "ample opportunity to ascertain the truth of the representations before he acts." (*Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 94, 169 N.E.2d 229.) Defendant contends that plaintiff had the opportunity to inquire directly of Michael Butler about his plans with respect to lot 12. In our view, at this stage of the proceeding plaintiff must only raise a genuine issue of fact on the question, which it has done.

Defendant also argues that plaintiff suffered no injury as a result of the execution of the release. While nominally directed at the validity of the release, in substance defendant's argument is addressed to the merits of plaintiff's claim. Defendant contends that plaintiff never acquired the right to purchase lot 12 because plaintiff refused to purchase lots 14 and 15 except as part of a "package deal" with lot 12. Defendant maintains that contracts for the sale of lots 14 and 15 were never entered into, and therefore, no obligation to sell lot 12 to plaintiff arose. Accordingly, defendant concludes plaintiff has no right to specific performance.

This argument was made below but not ruled upon. As we may affirm on any basis appearing in the record regardless of whether relied upon by the trial court (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9), we briefly consider this argument now.

Suffice it to say that we do not find sufficient facts in the record to allow us to agree with defendant's characterization of the transaction relating to lots 12, 14 and 15. Defendant maintains that plaintiff's offer was a package deal. While it appears that plaintiff desired to purchase all three lots, it is not entirely clear from the record that the offers were not separate and subject to separate acceptance. Similarly, despite defendant's characterization of its response as a counter-offer to sell lots 14 and 15 alone, it is not clear from the record that

586

defendant did not, in fact, accept the offers for lots 14 and 15 such that, contrary to defendant's assertion, contracts for the sale of those lots did come into existence. Factual questions exist on this issue. We express no opinion at this point on the correctness of defendant's legal reasoning or whether it reflects a proper construction of the contract.

A motion for summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) As genuine issues of fact exist, summary judgment was improper.

The judgment of the circuit court of Du Page County is reversed and the cause remanded.

Reversed and remanded.

INGLIS and McLAREN, JJ., concur.