In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2634

DANIEL HOSEMAN, Trustee,

*Plaintiff-Appellant,*

*v.*

SIDNEY WEINSCHNEIDER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6135—**Elaine E. Bucklo**, *Judge.*

ARGUED DECEMBER 13, 2002—DECIDED MARCH 6, 2003

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Bankruptcy Trustee Daniel Hoseman appeals the entry of judgment in favor of Debtor Sidney Weinschneider. The Trustee contends that Weinschneider's claim for 23% of the profits of G.W. Burton, asserted by Weinschneider in a 1996 lawsuit against the company and its principals, is rightfully part of the bankruptcy estate, and the Trustee brought this declaratory judgment action to settle the issue. Weinschneider argues that his claim against Burton is not part of the bankruptcy estate and, even if it is, the Trustee signed a waiver of claims against Weinschneider as well as a covenant not to sue after the Trustee had knowledge of

Weinschneider's 1996 lawsuit. Because we find that the Trustee has waived any right to bring this suit by executing a valid release of claims against Weinschneider, we affirm the district court's judgment in favor of Weinschneider.

## I.  HISTORY

Sidney Weinschneider has been in the business of operating nursing homes since 1973. During the late 1980s, he had acquired an interest in four nursing homes in Illinois, but by 1989, those homes were experiencing financial and regulatory difficulties. By March 1989, Home Savings, Weinschneider's mortgagee, had foreclosed on the mortgages of the four nursing homes then owned by Weinschneider, eventually taking over their operation. Because of Weinschneider's experience in operating nursing homes, Home Savings proposed at some point in 1989 that he put together a management team to continue running the homes.

During the summer of 1989, Weinschneider approached his friend Burton Behr about the possibility of managing the homes now owned by Home Savings. The two met face-to-face in August to continue their discussions, and it was at this meeting that Behr suggested that the two involve Harold Geiser, a CPA and friend of Behr's, in their management team. The three apparently met several times throughout September and October of 1989. On September 25, 1989, Weinschneider proposed to Home Savings that a new entity called G.W. Burton ("Burton"), which was to be owned by Weinschneider, Behr, and Geiser, manage the nursing homes. Home Savings expressed interest in working with the Burton enterprise and asked if it could meet with the other members of the proposed management team. Weinschneider scheduled this meeting for October 12, 1989. Before this meeting took place,

on October 10, 1989, Weinschneider filed a Chapter 11 petition in bankruptcy court. Nevertheless, the meeting between Weinschneider, Behr, Geiser, and Home Savings took place as scheduled. On October 19, 1989, Burton was incorporated. On December 1, 1989, Burton secured the contract to manage the Home Savings nursing homes.

Sometime in September or October 1989—the exact date is the subject of dispute—while Weinschneider, Behr, and Geiser were discussing the formation of Burton, the three agreed that Weinschneider would own 23% of the new entity, and would receive profits from that ownership interest if Burton became the owner or lessee of the nursing homes and if those homes operated at a profit. In return for his interest, Weinschneider agreed to continue his efforts to secure for Burton a management agreement and purchase option with Home Savings, and to continue to advise Behr and Geiser regarding how to manage the nursing homes. The agreement that Weinschneider owned 23% of Burton was memorialized in a December 8, 1989 letter from Behr to Weinschneider.

As noted above, Weinschneider filed his petition for bankruptcy on October 10, 1989, in the midst of the activity surrounding the formation of Burton. On November 15, 1989, Weinschneider filed his "Statement of Financial Affairs, Schedules of Assets and Liabilities, State of Executory Contracts" with the bankruptcy court. His statement did not list any interest in Burton, nor any claims he had against the company. On May 12, 1990, Weinschneider's Chapter 11 case was converted to a Chapter 7 case, and Daniel Hoseman was appointed Trustee.

In June 1990, the Official Unsecured Creditors Committee filed an adversary action against Weinschneider and others seeking, among other things, the turnover of certain property. The Trustee, on behalf of the creditors,

settled this litigation in 1992; the settlement agreement was approved by the bankruptcy court in an order dated July 28, 1992, after proper notice was provided to all creditors.

In December 1996, pursuant to the settlement agreement, the Trustee executed a broad release and covenant not to sue. The release provided that the Trustee "hereby remise[d], release[d], and forever discharge[d] all claims, known or unknown, against [Weinschneider, his wife, and certain trusts]." (Appellant's Supp. App. at 200.) The covenant not to sue stated that the Trustee would refrain from "instituting, prosecuting or participating in any suit or action, at law or in equity, or to take any action to collect, enforce or recover on any claim, known or unknown, which the [bankruptcy estate] may, could or have against [Weinschneider, his wife, and certain trusts]." (Appellant's Supp. App. at 202.) Pursuant to the agreement, Weinschneider and others turned over one million dollars worth of property to the Trustees of Weinschneider's and his wife's estates.

In June 1995—following the 1992 settlement agreement, but prior to the Trustee's execution of the release and covenant not to sue—Weinschneider filed an amendment to his bankruptcy Schedule B-3, indicating that he held a 23% interest in G.W. Burton. The amendment stated:

Debtor amends his Schedule B-3 to list a post-petition acquired claim that is not property of the bankruptcy estate. This Amendment is made for disclosure purposes only and does not make this claim property of the bankruptcy estate. The post-petition claim is as follows:

Claim for a 23% interest in G.W. Burton and Associates, L.T.D. ("G.W. Burton") based on an agreement made between debtor, Burton W. Behr and Harold Geiser . . . . The debtor's claim for this interest is not property of the estate because the interest was

> acquired after the 10/10/89 bankruptcy filing and the debtor did not have any sort of claim for such interest as of the bankruptcy filing. Such claim cannot be characterized as proceeds or other progeny of property of the bankruptcy estate under code sec. 541(a)(6). Likewise, the interest in G.W. Burton was given to Sidney Weinschneider in exchange for his post-petition services to G.W. Burton. The value of this claim is listed as unknown because it is highly speculative. Debtor had made several demands to formally obtain the interest in G.W. Burton. It appears that a lawsuit may have to be filed in order to enforce the above described agreement and acknowledgment.

*Hoseman v. Weinschneider (In re Weinschneider),* No. 89 B 17026, 1999 Bankr. LEXIS 1079, at *18-19 (Bankr. N.D. Ill. Aug. 30, 2001). A June 15, 1995 letter sent to the Trustee in connection with this amendment did not mention any of Weinschneider's activities or negotiations that occurred prior to the filing of his Chapter 11 petition, but the Trustee was apparently able to learn additional details about the formation and early activities of the enterprise through later communications with Weinschneider's attorneys.

In February 1996, Weinschneider filed an Illinois state court contract action against Burton, Behr, and Geiser seeking his share of Burton's profits. In December 1996, the Trustee executed the release and the covenant not to sue. On February 27, 1998, the Trustee sued in bankruptcy court seeking a declaration that the state court lawsuit was the property of the bankruptcy estate. In response to the Trustee's lawsuit, Weinschneider argued that his claim against Burton arose after he filed for bankruptcy and was therefore not part of the bankruptcy estate. Weinschneider also raised as an affirmative defense the release signed by the Trustee in late 1996—

after Weinschneider's suit had been filed. Both parties filed for summary judgment.

The bankruptcy court granted summary judgment in favor of the Trustee on his claim that the state court suit was the property of the bankruptcy estate. The bankruptcy court denied both parties' motions for summary judgment on Weinschneider's affirmative defense, finding disputed issues of material fact about whether Weinschneider concealed his claim against Burton, or whether Weinschneider provided false or incomplete information in his bankruptcy filings in an attempt to mislead the Trustee. After trial on the defense issue, the bankruptcy court ruled that the Trustee's action was not barred by the release and covenant not to sue because there was evidence that Weinschneider fraudulently induced the Trustee's execution of the release by making false statements in his amended Schedule B-3, rendering the release void.

Weinschneider appealed the bankruptcy court decision to the district court, which first held that the question of whether Weinschneider's claim against Burton was part of the bankruptcy estate raised an issue of fact, precluding summary judgment. The district court went on, however, to find that the release and covenant not to sue signed by the Trustee in 1996 were not fraudulently induced by Weinschneider and that those documents, by their terms, barred the Trustee's suit. The court therefore entered judgment in favor of Weinschneider, and the Trustee brought this appeal. We affirm the judgment of the district court.

## II. ANALYSIS

We review the bankruptcy court's factual findings for clear error, while conclusions of law by both the bankruptcy court and the district court are reviewed *de novo*.

*In re Image Worldwide, Ltd.*, 139 F.3d 574, 576 (7th Cir. 1998). The disposition of cross-motions for summary judgment is reviewed *de novo*, with all the facts and the inferences therefrom viewed in a light most favorable to each nonmoving party. *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Summary judgment in favor of one party is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In this appeal, the Trustee first argues that the district court erred in reversing the bankruptcy court's determination that Weinschneider's claim against Burton and its principals was part of the bankruptcy estate. The bankruptcy court found that Weinschneider's claim arose out of activities rooted in his prebankruptcy past, holding that the claim was therefore part of the bankruptcy estate. The district court disagreed, finding that, for summary judgment purposes, an issue of material fact had been raised with respect to whether Weinschneider's interest in Burton was secured pre- or post-bankruptcy. We need not consider such intricate questions of timing, however, as the second issue raised in this appeal—whether the release and covenant not to sue that the Trustee had executed in 1996 bar this lawsuit—is dispositive in precluding this suit by the Trustee.

A.  *Applicability of the Release and Covenant Not to Sue*

The first argument presented by the Trustee is that this lawsuit does not fall within the scope of the release and covenant not to sue. In fact, the Trustee goes to great lengths to distinguish the instant suit from one that would be covered by the literal terms of those documents. But both the release and the covenant are

phrased in rather broad language. Under Illinois law, "[a] release is a contract and, as such, is subject to the traditional rules of contract interpretation . . . . The intention of the parties, thus, controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement." *Doctor's Assoc., Inc. v. Duree*, 745 N.E.2d 1270, 1281-82 (Ill. App. 2001) (citations omitted). The express language of the release and covenant at issue here is clear and broad enough to remove any doubt as to their application to this lawsuit. The explicit language of the release covers "all claims, known or unknown." The covenant not to sue obligates the Trustee to decline to institute "any suit or action, at law or in equity" to pursue a claim against Weinschneider.

The Trustee argues, however, that a declaratory judgment action is neither an action at law nor a suit in equity and thus is not within the literal terms of the covenant. While this Court has noted that declaratory judgment actions are neither legal nor equitable, *see Moretrench Am. Corp. v. S.J. Groves & Sons Co.*, 839 F.2d 1284, 1286 (7th Cir. 1988), the Trustee fails to consider the additional language in the covenant, precluding him from "tak[ing] any action" in pursuit of a claim against Weinschneider. Thus, even assuming that a declaratory judgment suits not "any suit or action, at law or in equity," we believe that the covenant's language—as well as that of the release—is still broad enough to encompass this suit within its prohibition.

The Trustee also cites *Chandler Bank of Lyons v. Ray*, a Tenth Circuit case, for the proposition that an *in personam* action against the debtor and an *in rem* action against the debtor's property are distinguishable. 804 F.2d 577 (10th Cir. 1986). In that case, the creditor bank sought to enforce its lien against the property of a debtor subsequent to the debtor's discharge in bankruptcy, be-

fore which the bank had taken no action in the bankruptcy proceedings to preserve its claim. *Id.* at 578. The court allowed the suit to go forward despite the discharge, noting that "[t]he Bank was simply seeking to establish . . . that its lien . . . could be pursued by the Bank. Thus it was strictly an *in rem* action. It did not seek generally to proceed against the bankrupt in an *in personam* action. Therefore, its *in rem* action on the secured claim survived the bankruptcy." *Id.* at 579. In this case, the Trustee argues that his suit is similarly an *in rem* action against Weinschneider's claim, not against Weinschneider personally. Thus, the argument goes, the covenant—which applies only to actions "against [Weinschneider, his wife, and certain trusts]"—does not apply.

Both the bankruptcy court and the district court rightly rejected this argument. The Trustee's complaint names Weinschneider himself as defendant. The bankruptcy court noted that regardless of the Trustee's characterization of the suit, "it does seek to affect Weinschneider's rights vis á vis the State Court Suit. As such, it is a claim against Weinschneider." *Weinschneider*, 1999 Bankr. LEXIS 1079, at *37. The district court agreed with this reasoning, and so do we. However the Trustee chooses to characterize this suit, the result will potentially alter Weinschneider's right to bring the claim. Unlike an automobile (the property at issue in *Chandler Bank*), a claim for a share of profits has no real existence apart from the ability of its owner to assert it. Therefore, the Trustee's attempt to assert the claim on behalf of the bankruptcy estate is in reality an action against Weinschneider.

## B. *Formal Abandonment Procedure*

The Trustee next argues that the 1996 release of any claim he may have had regarding Weinschneider's law-

suit against Burton is invalid, as the claim was not relinquished pursuant to the formal abandonment procedures set forth in the Bankruptcy Code.[1] Because the release and covenant not to sue executed by the Trustee were part of a compromise settlement entered into by the Trustee with bankruptcy court approval under Rule 9019 of the Bankruptcy Code, compliance with the formal abandonment procedures was not necessary in this situation. In addition, bankruptcy trustees regularly make use of releases and waivers in administering bankruptcy estates, and such decisions do not always amount to "abandonment" of estate property. Rather, the giving of a release in exchange for some action by the debtor (in this case, the turning over of one million dollars worth of property), as part of a generally beneficial compromise settlement, may be the most efficient and fair means of administering the estate. In any event, compliance with the Bankruptcy Code's abandonment provisions is meant to ensure the fair treatment of creditors, *see Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002), and we believe that those interests have been adequately protected here.

We first note that bankruptcy trustees, who have a fiduciary obligation to the claimants against the bankruptcy estate, are generally given broad discretion to determine the best way to pursue the administration of the bankruptcy estate, and equally broad discretion to decide whether a compromise settlement—which may include a release of future claims or a covenant not to

---

[1] The Bankruptcy Code provides in pertinent part: "(a) After notice and hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a) (2002).

sue—is preferable to protracted litigation. As one bankruptcy court has noted:

> The administration of bankruptcy estates has twin goals of maximization of realization on creditors' claims and of prompt and efficient administration of the estate. To carry out this fiduciary duty to meet these goals, the trustee has a generally-recognized discretionary authority to take the actions that are necessary to accomplish them.

*Iannacone v. Foothill Capital Corp. (In re Hancock-Nelson Mercantile Co.),* 95 B.R. 982, 1003 (Bankr. D. Minn. 1989). *See also Official Comm. of Unsecured Creditors v. James Talcott, Inc.* (*In re Int'l Distribution Centers, Inc.*), 103 B.R. 420, 422-23 (S.D.N.Y. 1989) ("[A] court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement. A court may give weight to the Trustee's informed judgment that a compromise is fair and equitable . . . ."). Given these twin goals and the discretion vested in the Trustee to pursue them, we cannot say that the Trustee's decision to release future claims against Weinschneider in exchange for the turn over of one million dollars worth of property was contrary to the goal of protecting creditors embodied in the Bankruptcy Code.

In addition, the compromise settlement between the Trustee and Weinschneider was submitted to and approved by the bankruptcy court, after proper notice to Weinschneider's creditors and opportunity for a hearing on any objections (one objection, in fact, was considered by the court). In this case, the release and covenant not to sue were included in the compromise settlement agreed to by the parties in 1992. This settlement was approved by the bankruptcy court on July 28, 1992, after "due and proper notice of this application [for approval of the compromise] having been given to all parties in interest

and to all creditors . . . ." (Appellant's Supp. App. at 178.) Given this notice and opportunity to be heard, and the ultimate judicial approval of the settlement, we cannot say that the creditors were deprived of any protections afforded by the Bankruptcy Code.

Even after agreement was reached, the Trustee did not execute the release and covenant until four years later, as he waited for Weinschneider to comply with his end of the deal. In the end, however, the Trustee signed the release and covenant not to sue, foregoing any known or unknown future claims against Weinschneider in exchange for the turnover of one million dollars in property. The Trustee's execution of the release and covenant not to sue at issue here, as part of a comprehensive compromise settlement agreed to by the Trustee, submitted to the creditors with the opportunity for objections, and approved by the bankruptcy court, was a valid exercise of the Trustee's discretion in pursuing a fair and efficient administration of the bankruptcy estate.

## C. *Fraudulent Inducement*

Finally, the Trustee argues that even if the terms of the release and covenant not to sue are construed to apply to this suit, they are nonetheless invalid as they were obtained as the result of fraudulent misrepresentations by Weinschneider. "As with any contract, '[a] release may be set aside if there is fraud in the inducement.'" *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992) (quoting *Phil Dressler & Assoc. v. Old Oak Brook Inv. Corp.*, 548 N.E.2d 1343, 1347 (Ill. App. 1989)). To invalidate the release and covenant not to sue under a theory of fraudulent inducement, the Trustee bore the burden of proving, by clear and convincing evidence, each of the elements of such a claim. *Id.* (citation omitted). In Illinois, fraudulent inducement requires

proof of five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Id.* (quoting *Cotter v. Parrish*, 520 N.E.2d 1172, 1175 (Ill. App. 1988)). We agree with the district court that the Trustee has failed to meet his burden.

The district court found that the Trustee was unable to establish the first element of his claim—that Weinschneider made a false statement of material fact in his amended Schedule B-3, filed on June 12, 1995. The Trustee argued that Weinschneider's assertion in that form that his claim against Burton was acquired post-petition, in exchange for post-petition services, qualified as a false statement of material fact. Because the district court found that the claim was acquired pre-petition, and was therefore not part of the bankruptcy estate, it held that Weinschneider's assertions were not false. We need not, however, answer the question as to whether the claim was or was not part of the bankruptcy estate to find that the Trustee's claim of fraudulent inducement fails.[2]

---

[2] Satisfaction of the first fraudulent-inducement element is problematic for another reason. As the district court noted, Weinschneider's assertion that the claim against Burton was not part of the bankruptcy estate because it arose post-petition is more appropriately characterized as a *legal* conclusion, rather than a statement of material *fact*. A misrepresentation as to the law cannot give rise to a claim of fraudulent inducement: "As a general rule, one is not entitled to rely upon a representation of law since both parties are presumed to be equally capable of knowing and interpreting the law." *City of Aurora v. Green*, 467 N.E.2d 610, 613 (Ill. App. 1984).

The district court also found that the Trustee was unable to establish the second element of a fraudulent inducement claim in arguing that Weinschneider knew or believed he was making a false statement on his amended Schedule B-3 by asserting that his claim against Burton was acquired post-petition. The district court noted that even assuming Weinschneider acquired the claim pre-petition (an argument on which we express no opinion), such a determination was "not obvious. His rights in the matter depend on a rather subtle issue of law . . . ." *Hoseman v. Weinschneider*, 277 B.R. 894, 903 (N.D. Ill. 2002). The court noted that Weinschneider did not attempt to conceal any of his pre-petition activities with respect to Burton; the false statement identified by the Trustee only goes to the legal relevance of those activities. As the district court concluded, even if Weinschneider came to the wrong legal conclusion about whether his claim against Burton was part of the bankruptcy estate or not, the worst that can be said of that conclusion is that it may amount to a negligent misrepresentation. *Id.* (citing *Stewart v. Thrasher*, 610 N.E.2d 799, 802 (Ill. App. 1993) ("A negligent misrepresentation is a representation the maker believes to be true, but is, in fact, false."). An action for fraudulent misrepresentation requires more: "the making of a representation which the maker knows to be false, or is made with reckless disregard for its truth or falsity." *Id.* at 903-04. We agree with the district court that nothing in the record indicates that Weinschneider made a knowingly false statement of material fact to the Trustee regarding his claim against Burton. The Trustee therefore has failed to make out a claim for fraudulent inducement.

## III. CONCLUSION

This action falls squarely within the prohibition of the release and covenant not to sue executed by the Trustee

in 1996, and we find both to be valid. Therefore, those documents bar this lawsuit by the Trustee. Judgment in favor of Weinschneider is AFFIRMED.

A true Copy:

       Teste:

                           _____
                           *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*