**In the Matter of John Arthur WITT, Debtor.**

**No. 11–10609.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

May 10, 2012.

Eric D. Orr, Berne, IN, for Debtors.

### DECISION ON MOTION TO APPROVE SETTLEMENT

ROBERT E. GRANT, Chief Judge.

When the debtor filed his petition for relief under Chapter 7 of the United States Bankruptcy Code he was the owner of property that had previously been used as a gas station in Portland, Indiana. The underground tanks on the property had leaked and, as a consequence, the debtor was involved in litigation with a previous owner, Jay Petroleum, over the responsibility for cleaning up the property and remediating the environmental damage. Both the contaminated property and the claims against Jay Petroleum became property of the bankruptcy estate when the debtor filed bankruptcy. 11 U.S.C. § 541(a).

The trustee has negotiated a settlement of the environmental litigation. Under the terms of the settlement, Jay Petroleum will be responsible for cleaning up the property to the extent that the Indiana Department of Environmental Management issues a no further action letter. In return for access to the property, Jay Petroleum will pay the estate a lump sum of $20,000, together with additional payments of $500 per month and $12,000 per year until the cleanup has been completed. The trustee has filed a motion to approve the settlement and access agreement. Both the debtor and its environmental expert and co-plaintiff in the state court litigation, HydroTech, (who refer to themselves as the Environmental Plaintiffs) have objected and the matter is before the court following trial of the issues raised by the trustee's motion and those objections.

While private parties may settle their disputes on any terms which may be mutually satisfactory, that is not the case

in bankruptcy proceedings. *In re Chicago Rapid Transit,* 196 F.2d 484, 490 (7th Cir. 1952). Where a settlement affects the assets of a bankruptcy estate or their distribution, the settlement must be approved by the bankruptcy court. Doing so is a matter committed to the court's discretion. *In re Doctors Hospital of Hyde Park, Inc.,* 474 F.3d 421, 426 (7th Cir.2007). The court should canvas the issues, familiarize itself with the attendant facts and circumstances, and "make a[n] 'informed and independent judgment' about the settlement," In re *American Reserve Corp.,* 841 F.2d 159, 162 (7th Cir.1987), deciding "whether [it] is in the best interests of the estate." *Matter of Energy Cooperative, Inc.,* 886 F.2d 921, 927 (7th Cir.1989). As the proponent of the settlement, the trustee bears the burden of proving that it is. *In re Bell & Beckwith,* 93 B.R. 569, 574 (Bankr.N.D.Ohio 1988).

■■ In undertaking its review, the court does not substitute its own judgment for that of the trustee.[1] *In re Martin,* 212 B.R. 316, 319 (8th Cir. BAP 1988). Instead, it should determine whether the trustee adequately investigated the matter and made an informed decision when choosing between the available alternatives, *see, In re Del Grosso,* 106 B.R. 165, 168–69 (Bankr.N.D.Ill.1989); if so, the court should then decide whether the settlement's terms "fall within the reasonable range of litigation possibilities." *Energy Co-op.,* 886 F.2d at 929 (quoting *In re New York, N.H. & H.R. Co.,* 632 F.2d 955 (2nd Cir.1980)). If they do, the settlement should be approved. Only if the proposed settlement falls below the lowest point in

the range of those possibilities should the court withhold its approval. *Energy Co-op.,* 886 F.2d at 929 (quoting *In re W.T. Grant, Co.,* 699 F.2d 599, 608 (2nd Cir. 1983)).

■■ The debtor and HydroTech do not mention this standard or attempt to apply it in their opposition to the trustee's motion. Their argument is that, rather than settling, the trustee should simply abandon both the real estate and the associated environmental claims. So, instead of focusing upon what the trustee is getting for the compromise, and whether that consideration falls below the low end in the reasonable range of litigation possibilities, they advocate for a result in which the estate would get nothing. Under the proposed settlement, the estate will have money in its coffers and property that currently has a negative value because of its environmental contamination would be cleaned up, perhaps becoming marketable. The objectors' preferred alternative is that the trustee should simply abandon everything and be left with nothing at all. In choosing between these alternatives—money in the bank versus an empty sack—it is relatively easy to see where the best interests of the bankruptcy estate lie.

The objectors' arguments regarding abandonment take several different forms. All of them overlook the Supreme Court's decision in *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). There the Court held that a bankruptcy trustee's ability to abandon environmentally contaminated property is not

---

1. The court is not deciding what the terms of any settlement should be. The decision to settle, and on what basis, has already been made. What the court is actually doing is reviewing the propriety of the decision to settle the matter on the terms proposed. *Matter of Big Horn Land & Cattle Co. LLC.,* 2010 Bankr.Lexis 1088 *3 (Bankr.N.D.Ind.2010). That review is binary. Either the court approves the settlement or it does not. It does not change the settlement's terms, redefine or condition them in some way. *In re Trism, Inc.,* 282 B.R. 662, 667–68 (8th Cir. BAP 2002).

unrestricted; instead, if it has the resources to do so, the trustee has some type of obligation to protect the public from the dangers the property presents, even if doing so yields no benefit to the estate. *Midlantic Nat. Bank*, 474 U.S. at 497–500, 507, 106 S.Ct. at 757–758, 762. *See also, Matter of Environmental Waste Control, Inc.*, 125 B.R. 546, 550 (N.D.Ind.1991). In light of these limitations, the trustee's decision to settle the environmental litigation in a way that not only provides for the clean-up of the contaminated property but also contributes money to the bankruptcy estate is completely consistent with the obligations imposed by *Midlantic*.

■ The debtor and HydroTech make a number of arguments either as to why the property has already been abandoned or why the trustee is obligated to do so. None of them have any merit. The first is that the debtor claimed the property as exempt, and when that exemption was not objected to within the time required, the contaminated property was excluded from the bankruptcy estate. As an initial matter this argument misconstrues the effect of a claimed exemption. A successful exemption does not really remove property from the bankruptcy estate.[2] Instead, it allocates the value of the property in which the exemption was claimed between the debtor and the bankruptcy estate. *In re Bartlett*, 326 B.R. 436, 440–41 (Bankr.N.D.Ind.2005) ("the primary purpose of exemptions is to allocate property (or the value of property) between the debtor and the estate"). *See also, Schwab v. Reilly*, —— U.S. ——, 130 S.Ct. 2652, 2657, 177 L.Ed.2d 234 (2010) (trustee may sell exempted property to recover value in excess of claimed exemption). To the extent of the claimed exemption, the value of the exempted property is available only to the debtor and is not liable for the claims of most creditors. 11 U.S.C. § 522(c). Yet, the property in which the exemption was claimed remains property of the estate and, if it has value in excess of the claimed exemption, it may be sold by the trustee so that its excess value can be made available for creditors. *Schwab*, —— U.S. ——, 130 S.Ct. 2652; *In re Salzer*, 180 B.R. 523, 529–30 (Bankr.N.D.Ind.1993). *See also, In re Hyman*, 967 F.2d 1316 (9th Cir.1992). More than just claiming an exemption is required before the property in which the exemption was claimed passes out of the bankruptcy estate or is insulated from administration by the trustee.[3] *Salzer*, 180 B.R. at 529. ("If a debtor wants to completely insulate property in which it has

**2.** Under the former Bankruptcy Act, exempt property did not become property of the bankruptcy estate. *See,* 5 Collier on Bankruptcy ¶ 541.LH(3)(c) (16th ed.). Since old habits die hard, some still use that kind of terminology when speaking of exempt property: that it is not property of the estate. But that is not an accurate description of how things actually work under the current Bankruptcy Code where even exempt property becomes property of the estate, 11 U.S.C. § 541(a), is to be delivered to the trustee, 11 U.S.C. § 542(a), and may potentially be sold under § 363.

**3.** If property has no unencumbered value in excess of a claimed exemption, that would provide a basis for the trustee to abandon it or for someone to ask that the trustee be compelled to do so, based upon the proposition that, after deducting the amount due on account of any liens and the debtor's claimed exemption, the property "is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a), (b). *See also, In re Indian Palms Assoc. Ltd.*, 61 F.3d 197, 206–07 (3rd Cir.1995); *Matter of Sutton*, 904 F.2d 327, 329 (5th Cir.1990); *In re Szymanski*, 344 B.R. 891, 896 (Bankr.N.D.Ind.2006); *In re Martin*, 350 B.R. 812, 817 (Bankr.N.D.Ind.2006). Nonetheless, both those alternatives require an additional step and notice to creditors before abandonment occurs. 11 U.S.C. § 554(a), (b). *See also,* Fed. R. Bankr. P. Rule 6007; N.D. Ind. L.B.R. B–2002–2.

claimed an exemption from administration by the bankruptcy trustee, it should file a motion to abandon the asset.").

 Objectors are not only wrong about the effect of a claimed exemption, they are also wrong about the exemption that the debtor has claimed in this case. Exemptions in bankruptcy are not automatic. They exist only as a result of an affirmative declaration by the debtor. *See,* 11 U.S.C. § 522; Fed. R. Bankr.P. Rule 4003(a). The debtor makes this declaration on Schedule C—Property Claimed as Exempt—where it is to describe the property, specify the legal basis for the exemption, state the value of the claimed exemption and the value of the property in which the exemption is being claimed. As for the property in question, the debtor's Schedule C, filed on March 4, 2011, states as follows:

> Property: Shop at 611 S. Meridian, Portland, Ind.
>
> Law providing exemption: I.C. 34–55–10–2(c)(2)
>
> Value of claimed exemption: 0.00
>
> Current value of property: 25,000

The objectors argue that when the trustee did not object to this claim within the time required, it had the effect of completely exempting the entire property, leaving nothing for the trustee. The argument is based upon their interpretation of I.C. 34–55–10–2(c)(2), which is Indiana's exemption for nonresidential real estate and tangible property. This particular sub-paragraph reads: "Other real estate or tangible personal property of eight thousand dollars ($8,000)." Because the statute does not say something like "interest in," they claim this particular Indiana exemption applies to the real estate itself and operates to exempt the entire property so long as it is worth no more than $8,000.[4] This argument is wrong both as a matter of statutory construction and federal bankruptcy law.

 Basic principles of statutory construction require that words be read in context; not in isolation, divorced from the context in which they appear. *Roberts v. Sea–Land Services, Inc.,* —— U.S. ——, 132 S.Ct. 1350, 1357, 182 L.Ed.2d 341 (2012) (quoting *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989); *U.S. v. Webber,* 536 F.3d 584, 593–94 (7th Cir. 2008); *Hatcher v. State,* 762 N.E.2d 170, 172 (Ind.Ct.App.2002)). The objectors' argument ignores this elementary rule. The title of the section in which the claimed exemption appears is: "Amount of Exemption." I.C. 34–55–10–2 (LexisNexis 2012). Paragraph (b) then states: "The amount of each exemption under subsection (c) applies until...." I.C. 34–55–10–2(b). The exemption in question then appears in sub-section (c). Furthermore, when the Indiana legislature wanted to provide an exemption for property itself it knew how to do so. *See e.g.,* I.C. 34–55–10–2(c)(4) (professionally prescribed health aids). When read in context, it is clear that I.C. 34–55–10–2(c)(2) allows the debtor to exempt $8,000 worth of non-residential real estate and tangible personal property; not any items of such property whose value does not exceed that amount.[5]

---

4. "The exemption applies to the 'real estate' itself, not just a 'financial interest.' To be eligible for the exemption, the real estate may not have a value of more than $8,000, but again, it is the property itself that is exempt so long as it does not exceed this value." Post-

Hearing Brief of Environmental Plaintiffs, pp. 17–18, filed Feb. 27, 2012.

5. Since both non-residential real estate and tangible personal property are treated together under the statute, if the objectors' argument is correct—that any non-residential real

The objectors' argument is also foreclosed by the Supreme Court's decision in *Schwab v. Reilly*, —— U.S. ——, 130 S.Ct. 2652, 2666–67, 177 L.Ed.2d 234 (2010). There the Court determined that the amount of a claimed exemption is determined by the "value of claimed exemption" placed on Schedule C and not by creative arguments based on other information. See also, *Matter of Sherbahn*, 170 B.R. 137, 140 (Bankr.N.D.Ind.1994) ("the extent of [an] exemption is determined by the value claimed exempt which the debtor places in its schedule of exemptions."); N.D. Ind. L.B.R. B–4003–1(b). In *Schwab*, the argument was that by valuing property in an amount equal to the claimed exemption the debtor actually exempted a much greater amount when the property turned out to be worth more than expected. Here the argument is that the exemption the debtor claimed actually operates to shelter far more than the value of the claimed exemption placed on Schedule C. In both cases, however, the essence of the argument is the same: The debtor can say one thing about the value of its claimed exemption on Schedule C and then argue for a higher value later should it wish to do so. As in *Schwab*, the trustee was entitled to rely upon the value of the claimed exemption on Schedule C, and was not required to object in order to preserve the estate's right to retain any value in excess of that amount. *Schwab*, —— U.S. at ——, 130

S.Ct. at 2669. In this case the debtor's claimed exemption for the real estate is $0.00. While that may very well be the equivalent of no exemption whatsoever, see, *In re Berryhill*, 254 B.R. 242 (Bankr. N.D.Ind.2000); *Swaim v. Kleven*, 1:04–cv–00033, 2004 WL 3550144 (D.N.D.Ind.2004), the debtor has not claimed the entire value of the property as exempt.[6]

Objectors also argue that, through the doctrines of waiver and promissory estoppel, the trustee has either already abandoned the environmental claims or is obligated to do so. The argument is based upon correspondence between the state court and the parties concerning the pending environmental litigation and how best to proceed given the debtor's bankruptcy and the various issues the bankruptcy generated. On July 29, 2011 (at a time when the settlement negotiations did not appear to be particularly productive) the trustee sent a letter to counsel for the parties in the state court litigation, copied to the judge, which objectors claim "made the unconditional commitment to 'fil[e] a motion with the Bankruptcy Court to abandon the estate's interest in the lawsuit.'" Post–Hearing Brief of the Environmental Plaintiffs, p. 22, filed Feb. 27, 2012.[7] Based on this letter, the state court cancelled a hearing set for August 1st and the environmental plaintiffs did not seek a rul-

estate worth less than $8,000 is completely exempt—the same principle would also apply to tangible personal property. That would easily allow someone to shelter a limitless amount of property from creditors, as well as providing a boon to precious metals dealers. One could simply put their assets in gold and silver coins, and so long as no single coin was worth more than $8,000 the entire lot would be exempt. Such an absurd result counsels against objectors' interpretation.

6. If a debtor wants to claim the entire value of an asset, or the asset itself, as exempt, it

should clearly say so on Schedule C by listing the exempt value as "full fair market value" or "100% of FMV." *Schwab*, —— U.S. at ——, 130 S.Ct. at 2668. See also, N.D. Ind. L.B.R. B–4003–1(b) (state the claimed exemption as "all").

7. After reciting the lack of progress in bringing the state court litigation to a conclusion, the trustee's precise statement was: "Accordingly, I will be filing a motion with the Bankruptcy Court to abandon the estate's interest in the lawsuit." Exhibit 9.

ing from the state court as to the debtor's continued role in the action. *Id.*

Objectors contend that the trustee's statement concerning abandonment was the intentional relinquishment of a known right and they cite *Hoseman v. Weinschneider,* 322 F.3d 468, 475 (7th Cir.2003), for the proposition that " '[B]ankruptcy trustees regularly make use of releases and waivers,' which are binding even though they 'do not always amount to "abandonment" of estate property.' " Post–Hearing Brief of the Environmental Plaintiffs, pp. 22–23. Although it may contain the word "waiver," *Hoseman* had nothing to do with the equitable doctrine objectors attempt to use to bind the trustee. The court's comment was made in the context of deciding whether a particular cause of action remained property of the estate or was encompassed by a release and covenant not to sue executed between the trustee and the debtor as part of a settlement which had been approved by the bankruptcy court. *See, Hoseman,* 322 F.3d at 474–75. Objectors have taken one sentence in the decision entirely out of context to make it appear as though the circuit said something much different than it did. What follows is a fuller recitation of what the court had to say:

> Because the release and covenant not to sue executed by the Trustee were part of a compromise settlement entered into by the trustee with bankruptcy court approval under Rule 9019 of the Bankruptcy Code, compliance with the formal abandonment procedures was not necessary in this situation. In addition, bankruptcy trustees regularly make use of releases and waivers in administering bankruptcy estates, and such decisions do not always amount to 'abandonment' of estate property. Rather, the giving of a release in exchange for some action by the debtor (in this case, the turning over of one million dollars worth of

property), as part of a generally beneficial compromise settlement, may be the most efficient and fair means of administering the estate. In any event, compliance with the Bankruptcy Code's abandonment provisions is meant to ensure the fair treatment of creditors, *see, Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 618 (7th Cir.2002), and we believe those interests have been adequately protected here.

\* \* \*

> In addition, the compromise settlement between the trustee and [the debtor] was submitted to and approved by the bankruptcy court, after proper notice to [the debtor's] creditors and opportunity for a hearing on any objections.... *Hoseman,* 322 F.3d at 474–75.

There is a vast difference between a formal release executed in connection with a settlement approved by the court after notice to creditors and a single sentence in a letter between counsel concerning the anticipated administration of the estate. When even the formal, court approved, abandonment of property may be revoked in light of subsequent information, *Matter of Lintz West Side Lumber, Inc.,* 655 F.2d 786, 789–90 (7th Cir.1981), the trustee's statement that he anticipated filing a motion to abandon is not a waiver of other options and does not bind the trustee to pursuing only abandonment.

 Objectors' promissory estoppel argument is similarly unavailing. The argument is that the trustee made a promise to file a motion for abandonment and, because they acted upon it in connection with cancelling an upcoming hearing, he is now bound to follow that course of action. This argument is not supported by a single bankruptcy decision that used the doctrine of promissory estoppel to force a trustee to administer the estate in a particular way.

Given that so many of the things trustees do require court approval, often after notice to creditors, the lack of authority is not surprising, and the only decision the court has discovered discussing the doctrine's applicability to trustees and the administration of the estate suggests that it is suspect. *In re Office Products of America, Inc.* 136 B.R. 675, 687 (Bankr.W.D.Tx. 1992) (doctrine of promissory estoppel did not require trustee to employ counsel). Nonetheless, assuming that it can be used, the facts of this case do not warrant its application.

 There are several requirements for promissory estoppel. First and foremost, however, there must be a promise, the enforcement of which is the only way to avoid injustice. *See, Brown v. Branch,* 758 N.E.2d 48, 52 (Ind.2001); *Security Bank & Trust Co. v. Bogard,* 494 N.E.2d 965, 968 (Ind.Ct.App.1986). *See also, Tyler v. Trustees of Purdue University,* 834 F.Supp.2d 830, 847 (N.D.Ind.2011). Neither of those requirements has been satisfied here. "[T]he mere expression of an intention is not a promise. Thus, where A says, 'I am going to sell my house. I want $70,000 for it,' he has made a mere statement of intention and not a promise." *Security Bank & Trust,* 494 N.E.2d at 969 (the statement "I'll take this to the loan committee" was an expression of intent, not a promise). In just the same way, the trustee's statement, "I will be filing a motion . . . to abandon," was an expression of intent, not a promise. Yet, even if it could be construed as a promise, enforcing it and requiring the trustee to abandon property would *create* an injustice, not avoid one, because it would deprive the estate of an asset without any notice to creditors.

 Objectors advance several arguments that do not revolve around abandonment. The first of them is that the motion should be denied because the settlement will not generate any money for creditors. This is an argument that can only be made by ignoring the legal standard governing the matter before the court. The proper inquiry is whether the settlement is in the best interests of the estate, *Energy Co-op.,* 886 F.2d at 927—in other words, will the *estate* be better off because of it?—not necessarily whether it will produce a distribution to creditors. It is entirely possible that the estate as a whole can be better off because of a proposed settlement—it can end up with more than it otherwise would and that more can then be used to pay costs of administration that would otherwise go unpaid—even when a particular settlement will not yield anything for creditors, and it is the interests of the estate, not the distribution to creditors, that is to be the focus of the court's inquiry.[8] Furthermore, at least to some extent, the objectors are complaining about a self-inflicted wound. One of the reasons the administration of this estate has become more costly than it would otherwise be is because of their opposition to the trustee. They cannot be allowed to oppose the trustee's efforts to administer the estate and then use the very costs that opposition created as a way to justify their objection.

In another argument that focuses upon something other than the interests of estate, objectors claim that because the Department of Environmental Management wants the debtor to clean-up the proper-

---

**8.** One reason for this is that the actual distribution to creditors cannot be known until the end of the case, when all the available assets have been liquidated, the costs of administration determined and claims allowed. This case has not yet reached that stage. Nonetheless, for the purposes of this decision the court accepts the proposition that, because of the costs of administration, there will be no distribution to creditors.

ty—not recover payment of the costs of doing so—the debtor has non-dischargeable obligations which prevent the trustee from settling.[9] To the extent this is the argument, it seems that the goal of the settlement is to fulfill whatever remediating obligations IDEM thinks the debtor may have. Based upon the testimony presented at trial, IDEM's satisfaction with the results of a clean-up and any conditions it may impose are a function of the condition of the property, not the identity of the owner. So whether the clean-up is performed by the debtor, by the trustee, or by Jay Petroleum, does not matter. IDEM's standards for determining whether it has been satisfactorily completed will be the same. As a result, through the settlement, Jay Petroleum will satisfy the debtor's obligation to IDEM for cleaning up the property. *See, Ohio v. Kovacs,* 469 U.S. 274, 284 n. 12, 105 S.Ct. 705, 710–11 n. 12, 83 L.Ed.2d 649 (1985).

To the extent the non-dischargeable liability argument arises out of the debtor's anticipated post-petition ownership of the property, *Ohio v. Kovacs,* 469 U.S. at 285, 105 S.Ct. at 711, those concerns are a bit speculative. The debtor may not end up owning the property after the bankruptcy is over. Once the clean-up has been completed, it is entirely possible that the trustee might sell the property to a third party, in which event the debtor would have nothing further to do with it. Yet, even if the property does go back to the debtor, it is difficult to see how any post-petition obligations he may have as a result of the settlement will be any different from what they would be if the property is abandoned. To begin with, the plans for the clean-up that the trustee and Jay Petroleum are working with are the same ones that the debtor and HydroTech submitted to IDEM, and which IDEM approved, prior to the petition. Second, whether or not IDEM will be satisfied with the job and what subsequent conditions it might impose after it is completed depend upon the property, not the identity of the owner. In light of this, it is difficult to see how the debtor's post-petition obligations because of the property will be any different because of the settlement.[10]

■■ As a final argument in opposition to the settlement, the objectors claim that the debtor assigned the first $35,000 in payments to HydroTech. The assignment applied to "(a) the amount of any deductible under the ELTF program (currently $35,000) and (b) any amount that is specifically designated, pursuant to a judgment of the Court or pursuant to a written settlement agreement, as the costs of Hy-

---

**9.** The non-dischargeability of environmental liability may not be as clear as the objectors contend. The Supreme Court addressed the issue in *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) and that decision can be read to stand for the proposition that if compliance with an obligation to clean-up contaminated property requires the debtor to spend money—as opposed to doing the job itself—the obligation is dischargeable. *U.S. v. Whizco, Inc.* 841 F.2d 147, 151 (6th Cir.1988). But *see, In re Torwico Electronics, Inc.,* 8 F.3d 146 (3rd Cir.1993); *In re Chateaugay,* 944 F.2d 997 (2nd Cir.1991). That would certainly seem to be the case here because no one is suggesting that the debtor can "do-it-yourself" where cleaning up the property is concerned.

**10.** There is also a public policy aspect to the objectors' argument that needs to be considered. If it would be correct that the debtor's potential non-dischargeable responsibility for contaminated property precludes settlement, then no settlement of environmental claims in an individual case would ever be possible. *Mid–Atlantic* would prevent abandonment and fears about nondischargeability would prevent settlement. The only remaining option would be litigation. A proposition the natural consequence of which is to condemn the parties to litigation has little to recommend it.

droTech's work." Ex. 18, ¶ 3. The money the trustee is to receive under the settlement does not appear to fall within the scope of this assignment. The trustee is being paid for granting Jay Petroleum access to the property during the time it takes to complete the clean-up. This is more in the nature of rent for the future occupancy of the property than it is compensation for past events and expenses. Furthermore, there are the trustee's avoiding powers to consider, *see*, 11 U.S.C. § 544, and it is not at all certain that such an unrecorded, unperfected interest would trump the interests of the trustee. Finally, we do not know how long the clean-up will take. If it takes more than a year, the amount the trustee receives will exceed the $35,000 HydroTech claims has been assigned to it ($20,000 + ($500 × 12) + $12,000 = $38,000).

The proposed settlement and access agreement is in the best interests of the bankruptcy estate. The objections filed by the debtor and HydroTech are overruled and the trustee's motion to approve that agreement will be granted. An order doing so will be entered.